## TAYLOR *v.* BRADLEY.

June, 1868.

For a breach of an agreement to let land on shares, the occupant or farmer may maintain an action immediately, without awaiting the expiration of the term.

An agreement to let a farm for a term of years, each party to furnish part of the tools, materials, &c., and one to cultivate it and have certain supplies, after which all products are to be equally divided—may be regarded, neither as a mere lease nor as a contract for services, but as a special contract, partaking the nature of an adventure.

The measure of damages on a breach, by the owner or lessor is, the value of such privilege of occupying and working the farm, subject to the conditions of the agreement, and under all the contingencies that are liable to affect the result.

Whether plaintiff hired another farm, in consequence of being refused possession under the contract. and, if so, what it cost to remove thither, are not relevant questions; and it is error to limit his recovery to the expense of such removal.

Whether the value of such a contract may be proved by the opinions of witnesses,—*Query ?*

Lewis C. Taylor sued Henry M. Bradley, in the supreme court, for breach of a special contract, by which defendant agreed to let to plaintiff for three years from a future day, a farm of one hundred and eighty-six acres ; each party to furnish half the tools, &c., and pay half the taxes, and the lessee, or farmer, to have certain family supplies from the products of the farm, after which all products were to be divided equally.

Before the commencement of the term, the defendant, who was not in fact the owner of the farm, but only a purchaser having a contract for its conveyance, assigned his contract to one Ingraham, who obtained a conveyance, took possession, and refused to give possession to plaintiff.

At the trial the judge admitted evidence of the necessity and the cost of plaintiff's hiring another farm, and the expense of removing thereto; and limited plaintiff's damages to the difference between this expense and what would have been the expense of removing to the farm defendant agreed to let.

*The supreme court.* affirmed a judgment, on a verdict for fifty dollars, for this amount of damages. Plaintiff appealed to this court.

*At the March term* the following opinion was read in consultation:

GROVER, J.—The case shows that at the time of making the contract by the parties, for the breach of which the action was brought, the defendant held a contract for the purchase of the farm in question from the owners in fee; that, before the time for the entering upon the performance of the contract between these parties, the defendant sold said contract to one Ingraham, and that the owner of the fee conveyed such farm, in pursuance thereof, to Ingraham. This shows that the defendant had such an interest in the farm, as would have enabled him to perform his contract, had he chosen to do so. Then it follows that the class of cases cited by defendant's counsel, fixing the rule of damages between vendor and vendee, lessor and lessee, when the vendor or lessor can not perform his contract because of a want of title, have no application to this case.

It is not material whether the contract between these parties created the technical relation of lessor and lessee between the parties. The contract is in writing, clear and explicit in its terms, and in substance, that defendant should let the plaintiff the farm for three years; that it should be stocked with twenty-five cows, each furnishing half; that the plaintiff should cultivate the farm, and, with certain exceptions, the products should be equally divided between the parties. From the case it appears that the plaintiff was prepared, ready and willing to perform this contract; that the defendant had, at the time of entering into the contract, such title as enabled him to perform, but that he sold and parted with this title voluntarily before the time fixed for the plaintiff to take possession of the farm. The suggestion of the defendant's counsel, that the plaintiff consented to this sale, is not sustained by the facts of the case, nor was the case disposed of upon any such theory in the supreme court.

The question is simply, what damages, if any, is the plaintiff

entitled to recover for the violation of this contract by the defendant, his failure to perform not arising from any defect of title or other inability to perform. It was held by the court below that the plaintiff was entitled to recover the additional expense of removing his family and effects to another farm, hired by him, about four miles more distant from his residence than the farm in question, over what it would have cost to remove to the one in question. And the court, in substance, limited his recovery to such expense. Upon what principle or authority this expense was allowed is not apparent to my mind, but, as the defendant has not appealed, and this question has not been discussed by counsel, I shall not examine or attempt to decide it. If the plaintiff can recover this and nothing more, it would follow, that, had not the plaintiff had occasion to remove, he could only have recovered nominal damages The plaintiff insisted upon his right to recover damages sustained by him in consequence of being deprived of the benefits he would have derived from performance. This was rejected by the court. This ruling is sought to be sustained upon the ground, first, that the action was commenced before such benefits and gains would have been received by the plaintiff in case of performance; and, secondly, upon the ground that such benefits and gains were so uncertain and contingent that the law will not permit a recovery therefor.

The first ground clearly cannot be sustained. If the contract was valuable to the plaintiff, he was at once deprived of this value by its violation by the defendant, and his cause of action therefor was complete, as much as at the end of the term. This must be considered as wholly independent of the second ground. This view is sustained by Masterton *v.* Mayor of Brooklyn, 7 *Hill,* 61; Bagley *v.* Smith, 10 *N. Y.* 489, and by numerous analogous cases, where damages in cases of personal injury, sustained after the commencement of the action, are held to be recoverable.

The principal difficulty arises upon the second ground. Questions of this character have been before the court in a vast number of cases, and their solution has been attended with much difficulty. The same rule has not been applied to all cases seemingly within the same principle. An ex-

amination of the cases will show that the courts have been endeavoring to establish rules, by the application of which a party will be compensated for the loss sustained by the breach of the contract; in other words for the benefits and gains he would have realized from its performance, and nothing more.

It is sometimes said that the profits that would have been derived from performance cannot be recovered, but this is only true of such as are contingent upon some other operation. Profits which would certainly have been realized but for the defendant's default are recoverable. Griffin *v.* Colver, 16 *N. Y.* 489. Upon this principle it was held that a party, who had contracted for an engine to propel machinery to be delivered upon a given day, could recover, as damages for the delay, the value of the use of the machinery to be propelled by it, although he could not show the profit he would have made by dressing lumber with such machinery, the latter being contingent. This shows the contingency or uncertainty upon which the rejection of the claim was based. It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency whether such gain or benefit would be derived at all. In the case referred to, it was certain the plaintiff would have had the benefit of the use of his machinery had the engine been received; but it was contingent on other matters whether profits in dressing timber therewith would have been realized; therefore the former was allowed and the latter rejected. Judge SELDEN, in his opinion in Griffin *v.* Colver, arrives at the conclusion, that had the plaintiff in Blanchard *v.* Ely, 21 *Wend.* 342, claimed damages for the loss of the trips of his steamer; that is, what she could have been chartered for such trips, he could have recovered therefor; but as he claimed to recover the profits he could have made upon such trips, the claim was rightly rejected, as it was uncertain whether there would have been any profits had the trip been made. It is sometimes said that speculative damages cannot be recovered, because the amount is uncertain; but such remarks will generally be found applicable to such damages as it is uncertain whether sustained at all from the breach. Sometimes the claim is rejected as being too remote.

This is another mode of saying that it is uncertain whether such damages resulted necessarily and immediately from the breach complained of.

The general rule is, that all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain. The latter description embraces, as I think, such only as are not the certain result of the breach, and does not embrace such as are the certain result, but uncertain in amount. Thus it has been held that a party agreeing to lease real estate, having title, who refuses to perform his contract, is liable for the difference between the rent agreed to be paid and the actual value of such rent. Driggs v. Dwight, 17 *Wend.* 71. The real value of the rent of real estate is more or less uncertain, particularly in country localities, and must always be determined by proof, and that often conflicting, and yet this has never been suggested as a reason against a recovery. In this case, Judge COWEN says, the measure of damages was certainly not confined to the difference of rent. The jury might look to the actual value of the bargain which the plaintiff had made. But the latter remark, I think must be understood only as enabling them from this source to determine the real value of the rent. In the present case, the natural, immediate, and direct consequence of the breach by the defendant, was to deprive the plaintiff of his right to the use of the farm, and the half of the products for three years, and I can see no reason why the plaintiff should not recover compensation for this, the same as though the contract gave him the use of the farm and all its products for the like term for a specified money rent. The uncertainty as to the gains in the latter case, so far as seasons and fluctuating markets are concerned, would be the same as in the present case.

It is clear that such uncertainty would be no barrier in the way of a recovery in case of a certain money rent. I think such uncertainty no obstacle to a recovery in the present case.

But the question still remains, how is the value of the plaintiff's bargain to be determined? In the language of SELDEN, J.: " The law uniformly adopts that mode of estimating dam-

Taylor *v.* Bradley.

ages which is the most definite and certain." In Masterton *v.* Mayor (*above*), where the marble had no fixed value, it was held that resort might be had to proof of the cost of furnishing it in the condition required for delivery. In accordance with this rule the value of the interest of the plaintiff must be proved by experienced farmers, acquainted with the business of farming and with the farm in question. This may be readily done if such an interest has a market value and the witnesses can testify to such value. The mere conjectures or opinions of witnesses can not be received. If it shall appear upon trial that the value of the plaintiff's interest can not be proved as above, for the reason that such an interest has no ascertainable market value, facts must be proved; the quantity of land improved, the quality of the soil, the quality of the various kinds of products in ordinary years; the market value of such products at the time of the breach, or at the usual market season therefor of the year before, the value of labor in cultivating the farm; and from these and other facts tending to throw light upon the question, the jury must determine the value of that bargain to the plaintiff at the time of the breach by the defendant. I think the court were correct in excluding the claim of the plaintiff for time employed in purchasing the cows he was to furnish, or the loss upon a resale of such cows. Such damages were not the direct, immediate consequences of the breach of the defendant, but depended upon other contingencies. The plaintiff will be fully compensated by recovering the value of his bargain. He ought not to have more, and I think he is not precluded from recovering this by any infirmity of the law in ascertaining its amount. He ought to receive no more than he would if at the time of entering into the contract he had had on hand the cows and other things required by him for performance on his part.

My conclusion, unaided by any opinion of the court below, or any argument or brief upon the part of the appellant, is, that the judgment appealed from must be reversed and a new trial ordered, costs to abide event.

The court, not being agreed, reserved the cause for future

consideration. At the *June term* the following opinion was delivered:

WOODRUFF, J.—No question appears to have been raised on the trial touching the liability of the defendant. Although it was alleged in the answer that the sale of the farm in question was by the consent of the plaintiff, and such consent is set up as a rescission of the contract declared upon, the proof obviously failed to establish such a rescission, and the case was properly treated as one in which, after the execution of the agreement, the defendant had voluntarily sold the farm and had broken his engagement with the plaintiff, and had thereby subjected himself to the payment of whatever damages the defendant had sustained thereby, to be assessed according to such rule as the law prescribes.

Neither the industry of counsel nor my own research has discovered any adjudged case in which the rule of damages for the breach of such an agreement has been declared.

In ascertaining the rule it may be material to determine what is the character of the agreement, and what relations would arise between the parties had it been carried out by mutual performance.

The words of the agreement express an undertaking by the defendant " to lease and to farm let " to the plaintiff the farm in question, known as the Gray Farm, for the term of three years. The further provisions show that the farm was to be stocked and furnished mainly by equal contribution of the parties, the plaintiff to wholly furnish some things, and to occupy and work the farm; the defendant to wholly supply and pay for other things, and to have the privilege of also working and improving the farm; and all the proceeds of the farm (over and above keeping the stock thereon, and the use of certain specified articles in the plaintiff's family), are " to be divided between the respective parties equally, share and share equal, both as to expenses and profits arising from said farm."

If this agreement is to be treated as an agreement for a lease, such as if carried into execution would create the relation of landlord and tenant, then some guide or principle governing

IV.—24

the recovery of damages will be found in cases of the breach of agreements to lease.

If it is to be treated as a contract for work and labor, the compensation therefor to be made in the partial support of the family on the farm, and in the final division of the proceeds of the cultivation, then some analogy will be found in the cases which declare the rule of damages for a breach of contracts to employ for definite term.

And if it shall appear to be an agreement of a mixed nature, containing some of the characteristics of both, the rule must be derived from general principles that may be in harmony, if possible, with both, or, at least, conformable to the law of contracts generally.

In Jackson *ex dem.* Colden *v.* Brownell, 1 *Johns.* 267, the permitting of two persons to reside on the farm for one year, cultivate it, and divide the grain with other two, who held under a lease from the lessor of the plaintiff, and also resided thereon, was held a breach of the condition of a lease which forbade more than two families, or tenants, to " reside on, use or occupy any part of the premises." And to the claim that the two persons so cultivating the farm were mere servants and that their contract was a contract for labor and service, to be paid for out of the crops, LIVINGSTON, J., says: " The only question is, whether they were tenants or barely servants ; each had every character of a tenant and not of a mere laboror for the owner of the soil ; they took under a contract for a year ; they occupied the same house ; they held an interest or estate in the land ; they paid rent in grain ; they might bring their own cattle on and reap what they pleased from it for their exclusive benefit, except grain, which was to be divided."

In Foote *v.* Colvin, 3 *Johns.* 215, where one Litchfield sowed fourteen acres of land belonging to the plaintiff Foote with rye, on an agreement that Foote should have one-third of the crop and Litchfield two-thirds, to be divided upon the field, it was held that the two had a joint interest in the crop, and as such, could maintain trespass against a wrong-doer who cut and carried it away ; and to the argument that Foote's share on the division provided for was to be regarded as rent, and,

therefore, as the property of the cropper as tenant until gathered and divided, SPENCER, J., holding that the property was joint, says: " This seems best to promote the intentions of landlord and tenant; if the portion reserved for the land-lord was to be considered as rent, and in which he was to have no interest until severance and delivery, it would put it in the power of tenants clandestinely to alienate the produce of the land, to the injury of the person who had enabled them to raise the crop."

And, in Bradish *v.* Schenck, 8 *Johns.* 151, where Schenck brought an action of trespass *quare clausum fregit* against Bradish, for damage done to a crop, it was proved that one Curtiss " took the land of the plaintiff and planted it with corn upon shares." To the objection that the possession was in Curtiss, as tenant, and the property in the crop was in him, it is said, *per curiam,* " letting land upon share for a single crop is no lease of land, and the owner alone must bring trespass for breaking the close. Schenck and Curtiss were tenants in common of the corn," &c.

On the other hand, in Stewart *v.* Doughty, 9 *Johns.* 107, where one Van Antwerp let a farm for six years to A. Stewart, the latter stipulating " to render, yield and pay to Van Ant-werp the one-half of all the wheat, rye, corn and other grain raised on the farm in each year, in the bushel, after deducting the seed," with the right reserved to each to terminate the ar-rangement on giving six months' notice, in an action of tres-pass by Stewart, Junior, claiming under A. Stewart, for break-ing, entering and carrying away the crop, against the defend-ants, who justified as servants of Van Antwerp, who had given the six months' notice, and A. Stewart had removed in com-pliance therewith,—it was held, KENT, Ch. J., giving the opinion, that the crop belonged to A. Stewart as emblements, notwithstanding " the lease was determined. The sale of it while in the ground, before the notice to quit, as the prop-erty of A. Stewart, was a valid sale. That the whole property in the grain was in the lessee. That, it being a lease for five years, by which Van Antwerp " rented and hired, and suffered the lessee to possess and enjoy the farm, and gave him the quiet and uninterrupted possession," &c., an interest in the soil

passed, and the lessee would have been entitled to an action of trespass for any unlawful entry upon it. That the proportion of the productions of the farm which the tenant was yearly to render, was a payment of rent in kind. They were not tenants in common in the crops and productions raised; the interest and property in the crops was exclusively in the tenant until he had separated and delivered to the lessor his proportion. And, accordingly, the purchaser, having the exclusive interest in the crop, could maintain the action against the lessor for entering, cutting, and carrying away.

In Overseers v. Overseers, 14 *Johns.* 365, where it appeared that one Sweet "lived and worked on a farm in Fort Ann, in common with one Hotchkiss for about three years, the farm being worth about one hundred dollars a year, and that they held the farm on shares, rendering half the produce to Mead, the owner, the court, holding that Sweet thereby gained a settlement in Fort Ann, place the decision on the ground that the transaction was a " *bona fide* renting and occupying as tenant . . for two years and actually paying such rent," within the statute which makes that the test in determining the place of settlement. "Hotchkiss and Sweet had the entire control and ostensible possession of the farm, to sow and plant according to their discretion for three years. The one-half of the produce which they had a right to retain is not to be regarded as a mere rule of compensation for their labor; but the one-half which they were to yield to the proprietor of the land ought to be considered as rent for use of the farm."

Again: in De Mott v. Hagerman, 8 *Cow.* 220, where, in an instrument under seal, dated April 1, 1824, "John De Mott agrees to let said Billson work a part of his farm, &c., Billson to work such part as De Mott shall or may direct, to put all grain in, in good order, to find all the seed, and out of the crop deduct De Mott's one-half of seed so found; to deliver to De Mott at his store one-half of all the produce raised on said farm, &c.; said Billson to go on the farm as soon as convenient, and leave it on the first day of April next,"—it was held, that this was a letting of land upon shares, not a lease; and, as to the grain raised, the plaintiffs were tenants in common."

Taylor *v.* Bradley.

If these six cases can be harmonized, it must be on the ground, that three of them hold that such an arrangement as we are considering, when made in reference to a single crop, is not a lease, and the share reserved to the owner is not rent; but the others, that, when the arrangement is for one or more years, the agreement of hiring is a lease, the whole property in the crop is in the cultivator as tenant, it may be sold as his sole property, and the owner of the land acquires no interest therein until it is secured and divided and delivered to him, and then he takes it as rent. The use of the terms "let" or "lease," if that could be resorted to, to ascertain when the parties intend to create the relation of landlord and tenant, will not harmonize these cases, because terms were employed in most or all of them, which are apt to create a lease.

If these last-named cases were to govern the agreement now before us, we should be able to give it a specific character, and by referring to the rule of damages for a breach of an agreement to lease, possibly find some guide to the determination of the question raised by this appeal.

But, subsequent cases have not followed those which held that the arrangement has the effect lastly mentioned.

In Caswell *v.* Districh, 15 *Wend.* 379, the agreement by the owner was, "to let Districh (the defendant) have his farm for one year," and Districh agreed to sow oats and give the owner one-third in the half bushel; corn one-third in the basket; wheat one-third in the half bushel, &c. And the court say of this, "the agreement was a letting of the premises upon shares, and, technically speaking, it was not a lease," approving Foot *v.* Colvin, Bradish *v.* Schenck, and De Mott *v.* Hagerman, above referred to; although here, the agreement was for a fixed term, like Jackson *v.* Brownell. They hold, also, that the portion of the crops to be paid to the owner, was not by way of rent, in which case the property would be in the tenant until a division, but secured to the owner a property in the crop *ab initio*, and so made the two parties tenants in common.

The court intimate, that the decision in Stewart *v.* Doughty can be distinguished on the ground, that there the phraseology of the instrument so corresponded with the terms usual in leases as to indicate that the portion of the crops was in-

tended as payment of rent in kind, and hence, the whole interest belonged to the tenant until division.

In Putman *v*. Wise, 1 *Hill*, 234, the relation created by such arrangements is very elaborately discussed. There the instrument was in form substantially like that in Stewart *v*. Doughty. It was under seal; the owners "do, by these presents, lease and to farm let all said lands to the parties of the second part," &c.; then followed particular details, as to the furnishing of seed, &c.; and the parties of the second part covenanted "to yield, pay and give to the parties of the first part one-half of all the grain raised, to be delivered at," &c, with details as to the mode of cultivating, &c.; the feeding of sheep supplied by the parties of the first part; division of the wool; and that the parties of the first part should have the land from April 1, 1836, to April 1, 1837, and if they performed the agreement in a manner satisfactory to the owners, they should have it another year on the same terms.

Mr, Justice COWEN, in giving the opinion of the court, reviews the previous cases, particularly Stewart *v*. Doughty; regards Caswell *v*. Districh as in principle overruling it; repudiates any distinction founded on the employment of terms of "letting," "leasing," "rendering," &c., or on the difference between an agreement that is to continue for a single crop or more years; and holds, that the arrangement is, that the occupants or croppers shall come in rather as servants than tenants, taking an interest in the crops and other products as compensation for their labor. The owners are compensated for the use of their land by a share of the crop, and the occupiers are compensated for their labor. That this makes them tenants in common of the crops and products, unless the terms of the contract (which might be, without legal objection) are such as to secure to one or the other an exclusive interest in some or one of the particular crops or products. If division of products be contemplated, a tenancy in common arises in such as are to be divided.

He refers to numerous cases, chiefly from New England, to the effect that the occupier, being a mere servant, cannot maintain trespass *quare clausum fregit*, but the owner only. That his possession is that of the owner. That he has no interest

in the land he can assign, and on his death the contract would be at an end.

This case was followed by our present supreme court in Dinehart *v.* Wilson, 15 *Barb.* 595.

This latter view of the subject is in conformity with the cases in Massachusetts, New Hampshire and Maine; Lewis *v.* Lyman, 22 *Pick.* 437, and the cases therein referred to being prominent. And a case furnishing a very close analogy is found in Connecticut,—Loomis *v.* Marshall, 12 *Conn.* 69. See Bennett *v.* Platt, 9 *Pick.* 558; Chandler *v.* Thurston, 10 *Pick·* 209; Beaumont *v.* Crane, 14 *Mass.*, 400; Melville v. Brown, 15 *Id.* 82; Dockham *v.* Parker, 9 *Greenl.* 137; Kittredge *v.* Woods, 3 *N. H.* 503; Robertson *v.* George, 7 *Id.* 306; Bishop *v.* Doty, 1 *Vt.* 37.

If the question were new, I should say unhesitatingly that each case ought. to be chiefly governed by the language employed by the parties to express their intention. Nor do I perceive any legal objection to a stipulation in a lease for the payment of rent in wheat or product of the land leased. In general, in a lease for years, or a grant in fee, reserving rent, when it is payable in specified articles, as a certain number of bushels of wheat and so many fowls, &c., it is entirely clear that the parties expect that the payment will be out of the product of the farm. Nor would the reservation be any less rent, in my apprehension, if the reservation were in terms "rendering, delivering and paying so many bushels of wheat out of, or parcel of, the wheat raised on the farm."

Parties are certainly at liberty to define and establish their legal relations by the use of terms legally appropriate to the object; and it is not clear to my mind that courts should not give effect thereto, according to their understood legal meaning.

Hence, when A. agrees with B. that he will employ B. with his team, &c., upon his farm, whether for one year or five, leaving B. at liberty to cultivate such fields and plant such crops as he shall see fit, with just regard to what good husbandry requires, and to pay B. for his work, labor and services, one-half of the crops raised, it is obvious that the parties in-

.tend an agreement for work, labor and services, to be paid for by A. in a share of the results.

On the other hand, if A. should demise, lease and let the farm to B., to have and to hold for the term of one or five years, to be cultivated in a husband-like manner, rendering and paying to A. an annual rent for the use of the farm, to wit, one-half of the crops raised,—I perceive no sensible reason why the parties should not be deemed to intend an actual and technical lease, which would entitle the lessee to possession, give him a term in the land, make his payment rent in the technical sense. It may well be inferred from this language, contra-distinguished from the other, that here it was intended that the tenant should have exclusive possession and the whole ownership for the term, subject only to his duty to pay the rent as it accrued. While, in the other case, it would be equally plain that the owner did not intend to divest himself of possession or of title to the crops, but to come under an obligation and duty to compensate for the services by paying therefor out of and according to the quantity of the products. In each case the result at the end of the term, if both performed, would be precisely the same, and yet it may be deemed by parties contemplating such arrangements with an owner of land, very important to their security that they should have all the rights of tenants, and when they obtain an instrument in the form of a lease, in very terms giving them a term, and fixing rent as such, there would seem to me no legal reason for saying the parties did not intend just what such terms express. And, therefore, when, upon the instrument itself, the parties have, in legal language, created a term in the land, it should, in accordance with the view expressed by KENT, Ch. J., in Stewart *v.* Doughty, be permitted to operate accordingly. But, on the other hand, where the terms employed indicate a hiring of person and team, &c., and an intent that the owner hold the title and possession of the land, and make compensation out of the product, let it operate accordingly.

The mere circumstance that the pecuniary result of complete conformance would be identical, is not a conclusive test of the intention of the parties. The intermediate and different incidental legal consequences of the two instruments

Taylor *v.* Bradley.

may have been the great motive to the difference in their form, and presumptively have controlled the parties in their form. And, if a tenant will only commit himself to such an enterprise for a term of years, on condition that he shall have a legal estate in the land for the term, and that the owner of the fee shall look to the conditions of the lease and his covenants for his compensation for the use of the land as rent; and being of such mind he obtains from the owner an instrument in legal and apt terms to express that result,—why should not the instrument so operate? It is not a sufficient reason for denying such legal effect that another agreement, which is differently expressed, imports an intention to hire and pay for the work and labor.

Notwithstanding these suggestions, the balance of the authorities above cited seems to be, that, notwithstanding the technical terms employed, such an agreement does not amount to a technical lease; that the relation of landlord and tenant is not contemplated, and the portion of the crops reserved to the owner is not rent but compensation for the use of the land, while the other portion is compensation to the occupier for his work, labor and services, &c.; and that the legal possession of the land is in the owner, and the two are tenants in common of the crop.

If this view be taken of the nature and intent of the agreement before us, what is the rule of damages for its breach?

It is settled that if there be an agreement to employ for a specified term and for a specified compensation, and the employer refuses to perform, he is liable to pay as damages the stipulated compensation for the full period, provided the proposed employee remains out of employment and in readiness to serve during the whole period. But, although he is *prima facie* entitled to the whole compensation, it is competent for the defendant to reduce the recovery by showing that the plaintiff earned something in other ways during the period, and it is said that such reduction may be insisted upon on proof by the defendant that the plaintiff had the opportunity to accept other employment of the same kind, in the same locality and refused. *Sedgwick on Damages,* 2 ed. 352, ch. 12 ;

Costigan *v.* Mohawk & Hudson R. R. Co., 2 *Den.* 609, and cases cited; Heim *v.* Wolf, 1 *E. D. Smith,* 73.

But it is quite obvious that, if such be the rule, the party suing to recover his wages must wait until wages are due before he can recover them, and he can recover no more than have accrued. That is to say, the plaintiff can recover no more nor any faster than he would be entitled to receive if he had been employed. The employer will not be bound to pay the plaintiff for being idle more than he would pay him for rendering the service, and wages will accrue no faster to the plaintiff while idle than while employed, and, therefore, prospective wages cannot be recovered.

Can the rule of damages in such case be varied by declaring, not for wages as such, but for damages for denying to the plaintiff the opportunity to earn the wages? Doubtless the cause of action may be so dealt with, but that will not entitle the plaintiff to the stipulated compensation not yet accrued. *Non constat* whether the plaintiff may not in the future have employment which will be even more remunerative, and the plaintiff, by bringing his action immediately upon the refusal to employ, cannot practically deprive the defendant of the benefit of the reclamation or abatement for earnings which may be subsequently received from other sources. If the action be brought immediately, the plaintiff will, of course, be entitled to nominal damages, and it may be, under some circumstances, to special damages. But if he claims as damages the loss of the stipulated wages, he must wait until, but for the breach, he would have received them.

This is not, however, because he is not entitled to the benefit of his contract, nor because the whole value of the contract may not be recovered in a single action, and immediately upon the refusal of the defendant to perform; but because the whole wages do not represent the value of the contract. Presumptively the services which he does not render and which he can turn to other account are worth as much as the wages, and, therefore, so long as it is uncertain whether he will have other employment, it is impossible to tell what he has lost by the defendant's fault.

Now, if the contract which we have before set up was an

agreement for a lease, the rule of damages usually applied to such agreements is, the difference between the rent the tenant agrees to pay and the annual value of the term, and special damages may be awarded also for expenses necessarily incurred, which, by reason of the disappointment, are lost. Driggs *v.* Dwight, 17 *Wend.* 71; Giles *v.* O'Toole, 4 *Barb.* 261; Lawrence *v.* Wardwell, 6 *Id.* 424.

But the conclusion above arrived at is, that under the authorities we cannot treat the present contract as an agreement for a lease, properly or technically so called.

And it has been seen that if the agreement be regarded as an agreement for services, the recovery would be the stipulated compensation up to the time of suit brought, subject to the right of the defendant to show earnings, or at least a refusal to earn during the same period or a portion thereof.

Obviously, if the rule of damages applicable to a mere hiring of services were to be applied to this case, the plaintiff, having brought suit immediately after the breach, could not claim, upon any facts proved, that anything in the nature of wages or compensation had accrued, or would have then accrued to him had the contract been performed.

Besides, he was not, except in a remote sense, servant. He would have sowed and planted and cultivated at his entire discretion, subject only to the rules of good husbandry. He would have supplied a portion of the seed; he would have found food, shelter and maintenance for stock furnished by himself, the growth and produce of which would have been his own; he would have become himself the employer of the servants out of whose labor he had the chance of profit; he would have had a home for his family, and a portion of the supplies for their use, and, finally, his settlement would have been in the nature of an accounting and distribution of the stock and profits. This, it is true, did not create a partnership in the usual sense of that word, and if it did not create the relation of landlord and tenant, it was certainly not a hiring upon wages, the benefit of which could only be derived from performance or from being out of employment.

In my judgment we are not put to the alternative of regarding the present agreement as either the one or the other, but

may regard it as a special contract, partaking of some of the characteristics of both.

According to the above later cases, it is not a lease, nor an agreement for a lease, and the plaintiff would not have been a tenant, and yet he was not, and would not if he had entered into possession, have become the mere servant of the owner. Indeed, in Walker *v.* Fitts, 24 *Pick.* 191, in the supreme court of Massachusetts, where it is so uniformly held, that the occupier does not own the crops as tenant, rendering to the owner a portion as rent, but the two are tenants in common, Justice MORTON says: "The occupier is not a mere servant; it is not a contract of hire in which he receives compensation for services. It is not a mere license to enter and cultivate, nor a tenancy at will."—yet he says, "he had a right to occupy, and an interest in the land. The owner could not exclude him, nor maintain an action against him, for anything done in pursuance of the agreement."

In view of these observations, and in view also of the decisions above referred to, the learned justice did very pertinently add, " what the precise nature and character of his interest was, is not so easily determined."

It was, in view of the decisions, a special contract, partaking somewhat of the nature of an adventure, and entitling the party to the chance of profit or benefit derivable therefrom. On an agreement for wages, the court can declare, as matter of law, that if the party serve, he is entitled to the stipulated compensation.

If the amount be not fixed in the contract, then, what his services are worth. If he finds other employments they may be allowed in abatement.

Here the court cannot say, that, if the contract had been performed, he would have realized one dollar for his services; *non constat,* that the returns of the cultivation would have equaled his expenditure. It may be presumed that the earth will yield a reward to the husbandman: but, how large? That depends upon the details more or less contingent and speculative. And other contracts of the same nature, in the same place, calling for the same expenditure of time, labor,

skill, assistance and other details, and upon a farm of the same precise character, may safely be said to be impossible.

To my mind the only rule which can be prescribed, and the only rule which will do justice to the parties is, that the plaintiff is entitled to the value of his contract. He was entitled to its performance; it was broken; he is deprived of his adventure; what was this opportunity which the contract had apparently secured to him worth? To reap the benefit of it he must incur expense, perform labor, and submit to an appropriation of his stock. His damages are what he lost by being deprived of his chance of profit.

How then can the value of the contract be proved? If it cannot be proved, then the plaintiff can only recover nominal damages. I think the plaintiff is not without a better rule. The administration of justice frequently proceeds with reasonable certainty of accomplishing what is right, or as nearly right as human efforts may attain, in the face of similar difficulties, and it does so by making the experience of mankind, or, rather, the judgment which is founded upon such experience, the guide.

The question is like that of the market value of goods on a particular day; which becomes a test of damages, only as a means of judging how much one entitled thereto could have realized by a sale, and yet, numerous contingencies might have rendered it impossible to sell at that price, and other circumstances might render it grossly improbable that, if he had the goods, he would have sold them at that time. So when the damages for not executing a lease of a house are to be ascertained by proving the value of the lease at the rent reserved; and other cases are numerous, in which such value must be ascertained by resort to the judgment of men whose knowledge of the premises, and whose experience in the same or like matters, enables them to form a judgment on the subject.

It is quite true, that any opinion so expressed will be open to scrutiny; cross examination may draw out all the grounds of opinion, and may travel over all the causes of uncertainty and doubt above alluded to, even to the estimate in detail of all the possible results of working the farm, and its expenses and contingencies.

It is also true that any such opinion must be formed, in view of all the various uncertainties attending the operation of working the farm, but it is a result based upon years of experience and observation, with knowledge of the farm itself, upon which the plaintiff must rely, to prove the value of his contract. How much is such a privilege (whether it be called a lease or right of occupation, or by whatever name) worth? Any answer to that question necessarily brings into the mind of any one proposing to buy the privilege, all that it will cost him in time, labor, money or other sacrifice to enter upon performance and perform the contract on his part, and also all the uncertainty as to the result in producing value to him in return.

Such a privilege may be worth nothing. It may be worth more than the labor and expense attending it. I think it is a proper subject for proof in that form.

According to these views, the question, whether or not the plaintiff hired another farm, and what it cost to remove to it, becomes irrelevant.

For these reasons I think the judgment should be reversed, and a new trial ordered, costs to abide the event.

The majority of the judges concurred in reversing the judgment, without, however, it was understood, passing on the question of the admissibility of the opinions of witnesses, to prove the value of the contract.

Judgment reversed, and new trial ordered, costs to abide event.