(123 App. Div. 148.)

NASH et al. v. THOUSAND ISLANDS STEAMBOAT CO. et al.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1908.)

1. DAMAGES—BREACH OF CONTRACT—LOSS OF PROFITS.

Defendants owned and operated a fleet of six steamers on the St. Lawrence river, and contracted that for the seasons of 1904, 1905, and 1906 plaintiffs should have the exclusive souvenir, confectionery, view book, news, and parcel checking privileges on the fleet in consideration of a payment of $3,450. *Held*, that one of the steamers of the fleet having been run but one month in 1904, and not at all in 1906, the profits which plaintiffs necessarily lost by such partial breach of defendants' contract constituted the direct result of the breach, and were therefore recoverable; there being some evidence from which the jury might have awarded substantial damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 74–76.]

2. SHIPPING—CHARTER—CONSTRUCTION.

A contract to let to plaintiffs the exclusive news, confectionery, view, and checking privileges on defendant's steamers for certain specified seasons though denominated a lease was not a lease, but a license.

3. EVIDENCE—OPINION EVIDENCE—EXPERTS.

Profits lost by defendant's partial breach of a contract letting certain privileges on defendant's fleet of steamers to plaintiffs could not be proved by expert or opinion evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2289, 2342.]

4. DAMAGES—LOSS OF PROFITS—EVIDENCE.

In an action for defendant's partial breach of a contract to let to plaintiffs the exclusive checking, news, confectionery, and view privileges on defendant's fleet of steamers for specified seasons, evidence of the profits realized on the steamers in previous years, what was realized during the years the contract was in force, the kind of people plaintiffs were, their ability to do business, the nature of business, etc., was admissible to show the amount of profits probably lost.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 461.]

Appeal from Trial Term, Jefferson County.

Action by Phillip I. Nash and another against the Thousand Islands Steamboat Company and another. From a judgment for plaintiffs for nominal damages only, they appeal. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Kellogg & Reeves, for appellants.
Purcell & Purcell, for respondents.

WILLIAMS, J. The judgment should be reversed and a new trial granted, with costs to the appellants to abide event. The action was brought to recover damages for the breach of a contract. The court ordered a verdict for the plaintiffs, thus determining their right to re-

cover some damages, but limited the same to the nominal amount of six cents. The plaintiffs alone appeal.

The only question here involved, therefore, is whether the plaintiffs had the right to have the jury pass upon the question whether they were entitled to substantial damages, and to determine the amount thereof. The plaintiffs excepted to the disposition of the case made by the court, but did not ask to have the question of damages submitted to the jury; and, though the minutes show that a formal motion for a new trial was made by the plaintiffs, and was denied by the court, and exception taken to such decision, no order appears to have been entered, and certainly there was no appeal taken from such an order. No claim is made by the defendants, however, in this court that the question involved was not so raised, as that it may be considered and determined here. The defendants owned and operated steamers on the river St. Lawrence during the summer seasons of 1904, 1905, and 1906, viz., the St. Lawrence, New York, America, Islander, Wanderer, and Ramona, six in all. January 1, 1904, the parties entered into a written contract, whereby the defendants leased to the plaintiffs the exclusive souvenir, confectionery, view book, news, and parcel checking privileges on these six steamers during the three years named, and the plaintiffs agreed to pay therefor $3,450. They paid this amount to the defendants in accordance with the terms of the contract. This contract involved the agreement to run all these boats on the river in its business during all the seasons of the three years. The New York, however, was run only about a month in 1904, and not at all in 1905. In this respect, therefore, there was a failure by the defendants to perform, and a breach of the contract. The trial court, in disposing of the case, held that there was such a breach, and that the plaintiffs were entitled to recover therefor such damages as they could prove they had suffered. The further disposition of the case is stated by the court in its own language, viz.:

"The trouble comes on the question of damages. I think, however, that the rule of damages must be applied that obtains in the ordinary leasing of property; that is, that for a breach the plaintiff or lessee is entitled to recover the difference between the rent reserved and the actual value of the use and occupation of the property or premises. Now, in this case the evidence is unsatisfactory, and it seems to me fails to show what damages the plaintiffs have in fact sustained. They show how much they made on the boats in use in preceding years. They show how much business they did in 1904 and 1905. They also show that the fair rental of the entire fleet mentioned in this contract was $1,150 per year. There is no evidence whatever showing what portion of that should be apportioned to the New York, or how much they lost because the New York was not in commission during the whole of 1904 and 1905; so that, in that respect, it seems to me there is a failure to show what damages the plaintiffs have sustained by reason of this breach of contract. There is another consideration, and that is this: This privilege on these steamers was one that was leased in bulk, it might be said, to use a common expression. Now the New York was withdrawn. It is said that the remaining steamers did all of the business there was for them to do, and certainly the inference is fair that more or less of the business the New York would have done if she had continued in commission was done by the other boats, and that the plaintiffs, who had their privilege on these other boats, in that manner received some compensation at least for the loss, if any, that was sustained by the withdrawal of the New York. How much that is nobody knows, and that leaves the case entirely to conjecture as to how much the

plaintiffs ought to receive for the breach of this contract. So my conclusion is that the best that can be done is to order a verdict for the plaintiffs for nominal damages, to wit, six cents."

There are two leading cases on the question of damages which are called to our attention, one of which is relied on by the plaintiffs, and the other by the defendants, as controlling in the present case. Wakeman v. W. & W. Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58. What we have to do here is practically to analyze the two cases, and determine which, if either, covers the present case; and, if the earlier case does, whether the evidence here, under the rule there laid down, was sufficient to take this case to the jury. The Wakeman Case was brought to recover damages for the breach of an agreement that, if the plaintiffs should succeed in selling 50 of the defendants' machines to a single party in the Republic of Mexico, they should have for each 50 machines so sold the sole agency for defendants' machines in the locality, and the defendants would furnish machines for such agencies at the lowest net gold prices. Plaintiffs made one sale of 50 machines, and defendants filled the order. They made another sale of 50 machines, and defendants refused to fill the order, and repudiated the agreement. Action was brought, and plaintiffs sought to recover as damages the value of their contract, and made various offers of evidence to prove such value. This evidence was excluded. The court limited the damages to the profits on the last 50 machines ordered, and one additional ordered and not sent, at $4 each, in all $204, on the ground that any further allowance would be merely speculative and imaginary. The court discussed the question as follows:

"One who violates his contract with another is liable for all the direct and proximate damages which result from the violation. The damages must not be merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach of the contract. They may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they cannot be allowed. They are nearly always involved in some uncertainty and contingency, usually they are to be worked out in the future, and they can be determined only approximately, upon reasonable conjectures and probable estimates. They may be so uncertain, contingent, and imaginary as to be incapable of adequate proof, and then they cannot be recovered because they cannot be proved. But, when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of damages which he has caused is uncertain. It is not true that loss of profits cannot be allowed as damages for breach of contract. Losses sustained and gains prevented are proper elements of damage. Most contracts are entered into with the view of future profits, and such profits are in the contemplation of the parties, and, so far as they can be properly proved, they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy. It is usually his right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it, and then it is for the jury, under proper instructions as to the rule of damages, to determine the compensation to be awarded for the breach. When a contract is repudiated, the compensation of the party complaining of its repudiation

should be the value of the contract. He has been deprived of his contract, and he should have, in lieu thereof, its value, to be ascertained by the application of rules of law which have been laid down for the guidance of courts and juries."

The court there cited the following cases as illustrating the rules it had laid down, and quoted the language of the opinions in those cases, viz.: Masterton v. Mayor, 7 Hill, 61, 42 Am. Dec. 38; Bagley v. Smith, 10 N. Y. 489, 61 Am. Dec. 756; Taylor v. Bradley, 39 N. Y. 129, 100 Am. Dec. 415; Id., 4 Abb. Dec. 363; Schell v. Plumb, 55 N. Y. 592; Etherington v. Railroad Co., 88 N. Y. 641; Houghkirk v. D. & H. C. Co., 92 N. Y. 219, 44 Am. Rep. 370; and referred to many other cases to the same effect. In the Masterton Case, above, it was said:

"When the books speak of the profits anticipated from a good bargain as matters too remote and uncertain to be taken into the account in ascertaining the true measure of damages, they have reference to dependent and collateral engagements entered into on the faith and in expectation of the performance of the principal contract. * * * But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties stand on a different footing. It is difficult to comprehend why, in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages."

In the Bagley Case, above, it was said:

"It is very true that there is great difficulty in making an accurate estimate of future profits. This difficulty is inherent in the nature of the injury."

In the Taylor Case, above, it was said:

"It is sometimes said that the profits that would have been derived from performance cannot be recovered; but this is only true of such as are contingent upon some other operation. Profits which would certainly have been realized but for the defendant's default are recoverable. * * * It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency whether such gains or benefit would be derived at all. * * * It is sometimes said that speculative damages cannot be recovered because the amount is uncertain; but such remarks will generally be found applicable to such damages as it is uncertain whether they will be sustained at all from the breach. * * * The general rule is that all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain. The latter description embraces, as I think, such only as are not the certain result of the breach, and does not embrace such as are the certain result, but uncertain in amount."

In the Schell Case, above, an action upon an agreement by one person to support another during life, it was held that upon a breach thereof a recovery could be had, not only for the expenses to the time of the trial, but all prospective expenses during life, and the court said:

"The counsel for the appellants insists that such cannot be the rule, for the reason, as he insists, that it is impossible to ascertain the damages, as the duration of life is uncertain, and a further uncertainty arising from the physical condition of the person. * * * It may be further remarked that in an action for personal injuries the constant practice is to allow a recovery for such prospective damages as the jury are satisfied the party will sustain, notwithstanding the uncertainty of the duration of his life and other contingencies which may probably affect the amount."

And in the Etherington and Houghkirk Cases, above, it was held that under the civil damage act (chapter 646, Laws 1873), and under the acts allowing the next of kin of one whose death has been caused by the wrong or carelessness of another, to recover damages for such death, the amount of damages is exceedingly uncertain, problematical, and contingent, and yet they must be left to the determination of the jury upon such facts as can be proved. After reviewing these cases the court in the Wakeman Case further said:

"The plaintiff had the right under their agreement to establish agencies for the sale of the defendant's machines anywhere in Mexico where they could sell 50 machines. An agency, when thus established, was to be exclusive, and was to have some permanency. * * * It is quite true that the value, or, in other words, the damage caused to the plaintiffs by the total breach of the agreement by the defendants, is quite uncertain and difficult to be estimated. But the difficulty is not greater than it was in several of the cases above cited. There are some facts upon which a jury could base a judgment, not certain, nor strictly accurate, but sufficiently so for the administration of justice in such a case. * * * From all the facts proved, and offered to be proved, it cannot be doubted that the plaintiffs suffered damages to at least several hundred dollars, and they should not have been deprived of the damages which they made to appear because they could not make clear the full amount of their damages. All the facts should have been submitted to the jury, with proper instructions, and their verdict, not based upon mere speculation and possibilities but upon the facts and circumstances proved, would have approached as near the proper measure of justice as the nature of the case and the infirmities which attach to the administration of the law will admit. In 1 Sutherland on Damages, 113, it is said: 'If there is no more certain method of arriving at the amount, the injured party is entitled to submit to the jury the particular facts which have transpired, and to show the whole situation which is the foundation of the claim and expectation of profits so far as any detail offered has a legal tendency to support such claim.' * * * We think the opinions of witnesses as to the value of the agreement as to the profits which it or any agency established in pursuance of it could produce, as to the damages plaintiffs realized, and as to the number of machines they could have sold were properly excluded. This was not a case for expert or opinion evidence. * * * The safer rule in all such cases is to exclude opinions and receive facts, and then leave the matter for the determination of the jury. They may not have any certain basis upon which to rest their judgments, but that cannot be helped."

Many cases have been decided by the courts of this state since the Wakeman Case confirming the principles therein stated, and illustrating the same. It is unnecessary to cite or quote from all the cases in which this one has been approved of and followed. In our own department Stowell v. Greenwich Ins. Co., 20 App. Div. 188, 46 N. Y. Supp. 802, reversed on other grounds in 163 N. Y. 298, 57 N. E. 480, and Stowell v. Manufacturers', etc., Ins. Co., 61 App. Div. 58–62, 70 N. Y. Supp. 80, may be referred to. In short, the Wakeman Case has never been questioned in this state. Witherbee v. Meyer, hereinbefore referred to, belonged to a class differing from the Wakeman Case, and governed by different rules, as was clearly pointed out therein. It was an action to recover damages for breach of contract to furnish water power to run a gristmill, and it was held that the measure of damages was the difference between the rental value of the mill and machinery with the power contracted for and its value with the power furnished. The plaintiff sought to show gains prevented and losses sustained, but failed. The court cited Freeman v. Clute, 3 Barb. 424,

where there was a failure to deliver an engine as agreed, and the measure of damages was held to be the fair rental value of the mill and machinery while lying idle; Griffin v. Colver, 16 N. Y. 489, 69 Am. Dec. 718, where there was also a failure to deliver an engine as agreed, and the measure of damages was held to be the fair rental value of the machinery while lying idle and not the loss of anticipated profits; Rogers v. Bemus, 69 Pa. 432, where there was a failure to erect a sawmill within an agreed time, and it was held the measure of damages was the rental value of the mill, and not probable profits which might have been made; Pennypacker v. Jones, 106 Pa. 237, where there was a failure to place in plaintiff's mill machinery within an agreed time, also a defect in the machinery when furnished, and it was held loss of profits was not a proper subject of damages, but difference in value of machinery and loss of rental value; Cassidy v. Le Fevre, 45 N. Y. 562, where there was defective machinery furnished under an agreement, and it was held the measure of damages was difference in rental value while machinery was being repaired and not loss of prospective profits; Manhattan Stamp. Works v. Koehler, 45 Hun, 150, where there was a lease of a manufactory and steam power and the power was inadequate, and it was held the measure of damages was not injury to materials and loss of profits, but difference of rental value of the property; Rochester L. Co. v. Stiles & P. P. Co., 135 N. Y. 209, 31 N. E. 1018, where there was a failure to make and deliver dies to be used in plaintiff's business, and it was held the measure of damages was the additional amount required to be paid to get the dies made elsewhere. Judge Earl, who had written the opinion in the Wakeman Case, above, also wrote in this case. No reference was made in this case to the Wakeman or any of the cases there relied on. Apparently they were not regarded as belonging to the class of actions here being considered. Then the court in the Witherbee Case came to consider directly the Wakeman Case, and, among other things, said:

"The defendant insisted that the only damages that the plaintiff could recover were for a refusal to fill the orders actually given. Of course, argument was not needful to make it appear that the loss of profits on 50 machines actually sold would in no wise compensate plaintiffs for a breach of the contract. In that situation the plaintiffs undertook to show that they were prevented from making profits which were within the contemplation of the parties at the time they made the agreement, and as tending in that direction they offered to prove upon the trial that subsequent to the repudiation of the agreement the defendant established agencies in Mexico and a number of machines were sold through them. The evidence was excluded, and for that error the judgment was reversed, the court holding that prospective profits, so far as they could be properly proven, and which certainly would have been realized but for defendant's default, are allowable as damages, although the amount is uncertain, and that the evidence offered by the plaintiffs, which the court excluded, tended in that direction. But the Wakeman Case was in no wise intended to encroach upon the rule of damages applicable to cases of this character, by which is afforded a more certain and definite method of admeasuring damages. It belongs to a different class, to which the rule of this case cannot be made applicable, and the doctrine of it must be limited in its application to cases that come fairly within it."

This somewhat lengthy analysis of these two leading cases leads us to the conclusion that they are in no way conflicting, and that the Court of Appeals in the later case approve of and reaffirm the principles laid

down in the earlier case, and, as already suggested, the earlier case has been frequently cited and followed, and has never been questioned by any of the courts of this state, certainly not by the Court of Appeals. We think there can be no question that the Wakeman Case covers the case we are here considering, and authorizes the recovery of substantial damages for a breach of the contract in question, provided the jury shall find, upon proper and sufficient evidence, that such damages were suffered by the plaintiffs. Those damages could not be proved or disproved by such expert or opinion evidence as was given or offered on the trial. The Wakeman Case so held, and such holding has been approved of in many cases since decided. The trial judge was, we think, in error in saying that the rule of damages to be applied was that which obtains in the ordinary leasing of property, the difference between the rent reserved and the actual value of the use and occupation of the property. The agreement was not properly so called a leasing of any property. True the word "lease" was used in the agreement, lease of certain privileges. Really it was an agreement that the plaintiffs should have the exclusive right to exercise the privileges upon all the steamboats for the three seasons. It was not a lease of the steamboats. It was a license, a right, which could hardly be designated as a lease in the proper sense of that term. The defendants sold or agreed, for a large compensation paid by the plaintiffs, that they should have the right to exercise the privileges in question. That involved the agreement that the boats should all be run on the river during the three years. The defendants were guilty of a partial breach of the agreement. The plaintiffs claimed they suffered substantial damages in the loss of profits which they would certainly have realized, and which were within the contemplation of the parties when they made the agreement. They wanted to submit their claim to the jury. The trial court refused to permit them to do so upon the ground that there was no evidence in the case authorizing the jury to award substantial damages; that they could not and did not show what damages they had sustained; that they did not and could not show what profits they would have made if the contract had been performed by the defendants. The court pointed out the difficulties in the way of arriving correctly at the amount of such prospective profits, and held, therefore, that all the plaintiffs could recover was nominal damages. There were like difficulties in the Wakeman Case in determining what the plaintiffs would have made if the agreement therein had been performed. There must always be difficulty in determining what future profits would arise from conditions that never come about. In the Wakeman Case circumstances were showed and offered which the court said were sufficient to take the case to the jury—the character of the plaintiffs, the success they had already met with in Mexico, the establishment by defendant of agencies in Mexico after the breach of the agreement, and what business was done by these agencies, etc. And so here proof was given of the profits realized in previous years upon the steamboats, and what were realized during the three years this contract was in force. The kind of people the plaintiffs were, their ability to do business, and the nature of the business, and other circumstances appeared. Under the Wakeman Case all these things should have been left to the jury, under proper

instructions, and they should have been permitted to say, in their best judgment, whether the plaintiffs suffered substantial damages and to estimate and award the amount thereof. They could not figure them out with certainty, any more than they could the value to the widow and next of kin of a life taken by a railroad company, which involved the time the deceased would have lived but for the accident, how much money he would have earned, and how much of it the wife and next of kin would have received. But the fact that the jury would have difficulty in correctly reaching a proper amount would not prevent their passing upon the question and exercising their best judgment. We do not need to refer to the evidence and the figures, etc., in the case to show what the damages might have been found to be. It is sufficient for the purpose of reversing this judgment to hold that there was some evidence that should have been submitted to the jury, and upon which the jury might have awarded substantial as distinguished from nominal damages. It seems to us there was such evidence, and that the court erred in not submitting the question to the jury, and in limiting the verdict to six cents.

Judgment reversed and new trial ordered, with costs to appellant to abide event, upon questions of law and of fact. All concur.