Ingraham, J.
This action was originally brought by the plaintiff to recover for two causes of action; the first cause of action being for the amount due under a contract between the plaintiff and the Atlantic and Pacific Telegraph Company, and which the defendant undertook and assumed to perform ; and the second cause of action being for the damages sustained by plaintiff for a breach of the contract by the defendant, in having refused and neglected to carry out the contract on the 11th day of March, 1882; and judgment was demanded against the defendant for the sum of $32,000, with interest from April, 1882, under the contract, and the sum of $650,000 damages for the breach of said contract.
The action was first tried before a referee who found that the contract was a valid and subsisting contract between the plaintiff and the defendant; that from the 3d day of February, 1881, to and including the 22d day of June, 1882, the plaintiff fully performed and fulfilled on his part, all the terms and conditions of said contract, but that the defendant did not perform and fulfill all the terms and conditions of said contract on its part to be performed and fulfilled, specifying particularly the instances in which the defendant had failed to fulfill its obligation.
The referee also found as follows: “ Eleventh: That defendant collected for and on account of the plaintiff, from the several newspapers and newspaper proprietors who received and were served with said telegraphic news reports, the sums and prices that had been agreed to be paid by said newspaper reporters and proprietors to plaintiff for said news reports from the 3d *176 day of February, 1881, to the 22d day of June, 1882 ; that the collections so made by the defendant for said plaintiff under the said contract, amount to the aggregate sum of $157,800.”
“ Twelfth: That the telegraph service rendered by the defendant to the plaintiff from the 3d day of February, 1881, to the 22d day of June, 1882, under the terms and conditions of said contract, amounts to the sum of $78,500, for what is named as the regular service in the third clause of said contract, and the sum of $16,772.58 for additional or extra service in excess of 6,750 words per day, as provided in the fourth clause in said contract. The whole of said service under said contract during said time, amounted to the aggregate sum of $95,272.58, which the defendant was authorized under said contract to retain, and from said collections to account to and pay the balance to the plaintiff, and the amount that the defendant should have accounted for and paid to the plaintiff during said time, was the sum of $62,527.42, of which and on account of which, the defendant paid the aggregate sum of $45,750, leaving a balance clue and owing to the plaintiff from the defendant of the sum of $16,777.42.”
The referee further found that, by reason of the failure, neglect and refusal of the defendant to fulfill and perform the terms and conditions of the contract on its part, and because of the breach or breaches of the contract by the defendant thereinbefore stated, the plaintiff suffered great loss and damage by reason of the failure, neglect and refusal of the defendant to fulfill and perform the terms and conditions of the contract on its part to be fulfilled and performed, to the amount of $220,306.
And as a conclusion of law, the referee found that the contract was and is a valid and legal contract by and between .the said plaintiff and the Atlantic and Pacific Telegraph Company, and that plaintiff was entitled to judgment against the defendant for the sum of *177 $16,777.42, with interest thereon from the first day of July, 1882, on account of the balance due him from the collections made by defendant for plaintiff, over and above the amount which the defendant by said contract Avas entitled to retain out of said collections, as compensation for the said telegraph sendee under said contract; and also for the sum of $220,306, as damages for the several breaches of the said contract set forth in the complaint, with costs. .
From the judgment entered on this report of the referee, the defendant appealed, and on that appeal it Avas ordered by the General Term that the judgment as to the first cause of action set forth in the complaint for $16,777.42, be affirmed, and that the judgment as to the second cause of action for $220,306, be reversed, and a new trial ordered on that cause of action; thus in effect seA7ering the action.
The new trial ordered for the second cause of action Avas had before a jury, and on that trial a A'erdict Avas rendered in fai7or of the plaintiff for the sum of $250,000, on which verdict judgment was entered, and from that judgment the defendant appeals.
The judgment of the General Term on the former appeal, affirming the judgment entered on the first cause of action, is an adjudication of the execution, existence and validity of' the contract sued upon, the right of the plaintiff to recover in his individual name, and that the defendant was bound to perform the said contract; and, AvhateA7er my individual opinion may be on those questions, I think they are res adjudicada on the trial of the second cause of action.
The first cause of action having been upon the contract to recover the amount unpaid by the defendant to the plaintiff, under its terms, is not an adjudication that there was a breach of the contract by the defendant, and the first question presented is whether or not on the testimony there was evidence to sustain the finding of the jury that there had been a breach by the defend *178 ant of the whole contract, which would relieve the plaintiff from the duty of proving a compliance with the contract on his part, and support a verdict in his favor for the damages occasioned by such breach.
At the end of all the testimony in the case, the defendant moved for a nonsuit upon several grounds, one of which was that the plaintiff had not proved any breach of the contract, as alleged in the complaint, from which the plaintiff was shpwn by the evidence to have suffered any damages whatever, and that the words, or conduct, relied upon as a breach of the contract by anticipation, do not, by themselves, amount to a breach of the contract. The court denied that motion on the ground that it would not be justified, on the evidence in the case, in holding, as a matter of law, that there had been no breach, to which denial defendant’s counsel excepted.
The evidence relied upon by the plaintiff to prove a breach of the contract consists of three letters; the first dated March 11,1882 ; the second March 24,1882 ; and the third May 10, 1882. The first of these letters' is signed by Norvin Green, president of the defendant, and, after stating the execution of the contract, and the action of the parties under it, says: “ I am therefore directed by the sub-committee to whom this subject was referred, to say to you that, from and after this date, you will be charged for the transmission of your press reports at the same rate as that charged for other combination press reports in the respective territories in which said reports are handled under existing agreements, and that, unless such rate is paid or secured to be paid to this company, the service will be discontinued.” No reply was made to this letter, but plaintiff continued to furnish press reports to the defendant for transmission, which reports were duly transmitted, as required by the said contract, by the defendant. Subsequently, and on March 24, 1882, the president of the defendant sent another letter to the plaintiff which *179 stated that he was authorized by the proper committee of the board of directors of the defendant company to say that they would send the plaintiff’s news reports of a minimum of five thousand words daily, from New York to various places, at a price in excess of that provided by the contract. No mention is made in this letter of the existing contract between the parties, nor is there any statement in that letter that the defendant would refuse or did refuse to carry out the contract then in existence. To that letter, plaintiff made no reply, but continued after that time to furnish reports for transmission by the defendant, and which reports were duly transmitted.
Very soon after the receipt of this letter, the plaintiff had a conversation with Mr. Van Horn, the vice-president of the defendant, at which he informed Van Horn that the rates that the defendant had imposed upon him, as a condition of the continuance of his business, were prohibitory; that he could not pay them and would not pay them, and that he would sooner abandon the business than undertake to pay them, and that he would be compelled to discontinue business and he would hold the company responsible for six hundred thousand dollars damages, and to that statement no reply was made.
Subsequently, a letter was received from Mr. Eckert, general manager of the defendant, which inclosed a schedule of places to which the defendant stated it Avould transmit and deliver plaintiff’s reports, in future, upon the terms and conditions named in the letter of March 24, and which also contained a schedule of tolls to be charged on incoming matter to New York city since March 11, as provided in the letter of March 24, above referred to ; and to that letter the plaintiff made no reply, but continued, as before, to furnish reports to be transmitted by the Western Union Company, Avhich reports Avere duly received and transmitted by that company, and collections thereafter made by defendant, as provided in the contract.
*180 The plaintiff, however, testified that he had, about the time of the receipt of either the first or second letter, viz., March 11, or March 24, a conversation with Doctor Green, the president of the defendant, at which he informed him that the rates proposed to be charged were absolutely prohibitory, under the present revenue he was receiving; that if he was required to pay the prices that he had been paying for the transmission, then obviously, he was required to charge his customers a considerable increase of money • that with a view of experimenting, seeing what could be done in that direction, he would send out a circular to the various papers that he was then serving, to test their willingness to pay an increased price; that he very much doubted whether a sufficient increase could be imposed to justify anything like the rates that defendant proposed to charge as a condition of continuing the business; and that in reply to that proposition, Doctor Green stated that he thought it was well to do that; he thought he (the plaintiff) ought to collect more, and that he thought that his customers ought to stand by him and pay a much larger sum; and he thought that they would do it.
In pursuance of that conversation, the plaintiff sent out a circular, but he did not receive any additional pay or promise to pay sufficient to meet the demand of Doctor Green, and he subsequently saw Doctor Green and told him that it was impossible to collect enough additional money to justify these new rates, and in answer to that the plaintiff does not recollect that Doctor Green made any reply.
The plaintiff however .continued to deliver dispatches to the defendant, which were transmitted by the defendant, and on the 20th of June, 1882, the plaintiff served upon the defendant a notice as follows : “ Having on the first day of January, 1881, made a contract with the Atlantic and Pacific Telegraph Company for the service of my National press dispatches or news, which service under said contract was for a time carried on and per *181 formed by the Western Union Telegraph Company, but Avhieh the Western Union Telegraph Company sometime since declined further to carry out, and for the performance of Avhieh service the Western Union Telegraph Company has imposed different and more onerous terms, I hereby notify both said companies that I have not Avaived, and do not waive, any right or claim under said contract, but insist upon the same, and declare that I have been always and still am carrying out the same on my part, and am ready and able and willing, and hereby offer so to do, and ask that the same may be duly carried out by the Atlantic and Pacific Company or the Western Union Company.” No ansAver to that notice Avas received from either company.
The plaintiff continued to deliver to the Western Union Company dispatches, until the 22d of June, 1882, which dispatches were received and transmitted by the company, and on the 22d of June the plaintiff ceased business under the contract, and he gives in his testimony his reasons for discontinuing business, which are as folloAvs : “The Western Union Telegraph Company refused to pay me money. I had no money to carry on business, and I was croAvded by the directors of the United States Cable Company for the debts due the Cable Company for the preceding sixty days ; and having been unable to collect any money from the business to pay the expenses of the business, I was obliged to stop.” He was then asked the question, “If you had received the money which you specifically asked for, were you ready and willing and able to carry out the contract ? ” to which he answered, “I Avas.”
To sustain the plaintiff’s recovery in this action for a total breach of the contract, it was necessary for him to prove that the defendant had positively and absolutely refused to carry out a substantial part of its agreement.
As was said in Bogardus v. Life Ins. Co., 101 N. Y. 335 : “ The failure of one party to a contract to perform some of its obligations, when it consists of a number of *182 independent provisions, furnishes no excuse for nonperformance to the other party. It is only when the non-performance is of a condition precedent, or where such party has wholly refused to perform, or has wholly disabled himself from completing a substantial performance, that the other party is relieved from performance or a.tender thereof.” It is also settled that a a mere assertion that the party will not be able, or will refuse to perform his contract, is not sufficient. It must be a distinct and unequivocal and absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was given; for if he afterwards continues to urge or demand compliance with the contract, it is plain that he does not consider it at an end.” Benjamin on Sales, 4 Am. ed. (Bennett) § 568, cited with approval as a correct statement of the law by the Supreme Court of the United States in Smoot’s case, 15 Wallace, 48.
This action having been, based upon the breach of the contract, the burden was upon the plaintiff to prove such breach and the damages sustained by reason thereof.
The statement of inability or refusal to perform was not alleged in this action as a mere waiver of the performance of a condition precedent upon the part of the plaintiff, so as to dispense with such a performance, or a tender of performance, as in most of the cases cited; for example, the case of Lawrence v. Miller, 86 N. Y. 138; but to sustain this action, there must be alleged and proved such an act of the defendant as amounted to an entire abrogation of the contract, so that by the act of the defendant the contract is at an end, and this must be treated and acted upon as such by the party to whom the promise was made.
In Wakeman v. Wheeler & Wilson M’f’g Co., 101 N. Y. 210, the court held that in an action for a breach of a contract the recovery is based upon the repudiation of the contract. Plaintiff is deprived of his contract and *183 is entitled to recover, in lieu thereof, its value. That is the foundation of the plaintiff’s claim in this case, and, to entitle him to recover such value, he must prove that his contract was destroyed; that by some act of the defendant he was deprived thereof. In Fish v. Folley, 6 Hill, 54, it was held that, on a total breach of the contract, the contract was put an end to, and that gave plaintiff a right to sue for an equivalent in damages.
To sustain this burden, plaintiff has proved the three letters from the defendant. Assuming that the letter of March 11, 1882, was a notice that the defendant would not perform the services referred to in the contract, for the compensation therein provided, the plaintiff then had his election either to accept that letter as a refusal to perform, treat the contract as at an end and bring Ms action for a breach thereof ; or he could proceed under the contract and hold the defendant to a compliance with its terms. He could either treat the contract as broken and at an. end, or treat it in full force and effect. As an illustration of the cases in which such an election exists, see Noyes v. Phillips, 60 N. Y. 411; Higgins v. Del., Lack. & W. R. R. Co., Ib. 557, and the remarks of Nelson, Ch. J., in Masterton v. The Mayor, &c., 7 Hill, 71.
It is evident that these positions are inconsistent. In one case the contract was abrogated by the breach, and in the other case the defendant would be liable for the amount received and collected by it from the person^ to whom the dispatches were sent, less the compensation allowed by the contract to be retained by the defendant for the services performed.
Standing in this position, the plaintiff continued to deliver dispatches to the defendant, which were received and transmitted, and served a notice on the defendant that his contract-was still in force, and that he was carrying it out, which notice was received by the defendant without objection, and after the receipt of such notice his dispatches were received by the defendant and trans *184 mitted; and plaintiff then brought an action for the amount due under the contract to the 22d of June, 1882, and recovered judgment therefor. I think it is clear that this was an election to proceed under the contract, and hold the defendant to a compliance with its terms, and not to treat the contract as broken and at an end.
In Rodermund v. Clark, 46 N. Y. 357, it is held that, “ where there exists an election between inconsistent remedies, the party is confined to- the remedy which he first prefers and adopts. Any decisive act of the party, with knowledge of his rights and of the facts, determines his election in the case of conflicting and inconsistent remedies.” And in Sanger v. Wood, 3 John. Ch. 421, the Chancellor says: “ In the case where the remedies sought are absolutely repugnant to each other, the plaintiffs ought to have .made their election at once after they came to a knowledge of the facts...... Any decisive act of the party, with full knowledge of his rights and of the facts, determines his election, in the case of conflicting and inconsistent remedies. . . . . . I consider the going to trial in the action at law, and especially the entry of judgment afterwards upon the verdict, as a decided confirmation of the settlement.” See also Morris v. Rexford, 18 N. Y. 557.
Applying this rule, it is evident that the act of the plaintiff in insisting upon the performance of the contract, after the letters of March 11 and 24 and down to June 20, and the entry of the judgment in the action upon the contract for the amount due up to June 22, 1882, constituted an election to hold to the contract, and that the plaintiff, having elected to affirm the contract as it was, is bound by that election (see Washburn v. Great Western Ins. Co., 114 Mass. 175, cited with approval in Steinbacher v. The Relief Ins. Co., 77 N. Y. 499; Moller v. Tuska, 87 Ib. 166; Strong v. Strong, 102 Ib. 73.), and cannot now claim that the letters Avere such a breach of the contract as would entitle him to recover.
*185 I am also oí the opinion that the finding of the referee on the first cause of action, affirmed by the court, and standing unreversed, was conclusive as an adjudication that the contract was in force to the 22d of June, 1882, and there was therefore no breach of the contract prior to that time.
As before stated, the judgment between the same parties in favor of the plaintiff on the first cause of action entered on the referee’s report is an adjudication that the contract was duly executed between the plaintiff and the Atlantic and Pacific Telegraph Company; that the plaintiff was entitled to enforce the same ; and that the defendant was liable under the provisions of the contract; but it is also an adjudication that the contract was in force between the parties up to the 22d of June, 1882, for the referee finds that collections were made by the* defendant for said plaintiff, under the said contract, up to June 22d, and that the telegraph service rendered by the defendant to the plaintiff, from the 3d of February, 1881, to the 22d of June, 1882, under the terms and conditions of the contract, amount to the sum named, and for the balance due under the terms of the contract the plaintiff Avas given judgment.
The case of Davis v. Talcott, 12 N. Y. 187, Avas an action to recover for a breach of a contract on the part, of the defendant, which breach was denied, and on the trial the defendant proved that in a former action betAveen the same parties, in which the defendant in this action was plaintiff, he had recovered judgment upon the contract, and the court held that that former judgment was a bar to the action; that the plaintiff in the former action must have established his title to the prices stipulated, by proof that the agreement Avas carried out; that the defendants in that former action were at liberty to meet and combat those proofs bv counter evidence on their part; and that the report of the referee in that former action, followed by the judgment of the court, estopped the parties to that suit front *186 ever after questioning that fact in any controversy arising upon the same agreement.
In Bogardus v. N. Y. Life Ins. Co., 101 N. Y. 334, the court say: “ It is essential to the legal status of a cause of action on contract, that it should show an existing contract, and. a performance by the plaintiff. These facts must be alleged, and .if denied proved on the trial.” Applying this principle to the case at bar, to entitle the plaintiff to recover on the first cause of action, it was necessary for him to prove that the contract was executed and was in force to the 22d of June, and the report of the referee, followed by the judgment of the court allowing a recovery on the contract to the 22d of June, was an adjudication that the contract was in force to that time.
In Krekeler v. Ritter, 62 N. Y. 374, it was held, “ that a former judgment is competent to disprove a material allegation of the complaint, traversed by the answer, and as evidence it is conclusive as an adjudication of the same fact in the action between the same parties; that the same facts could not be retried between the same parties.
It being thus established that there was no breach of the contract by the defendant prior to the 22d of June, 1882, and as the evidence fails to disclose that the defendant committed any breach of the contract after June 22d, or after that date'did any act which could be construed into a refusal to perform the contract, but on the contrary shows that on June 22d, the plaintiff voluntarily ceased business under the contract because he had no money to carry on business, I am of the opinion that the plaintiff failed to establish a breach of the contract by the defendant, and without considering the other serious questions presented by the appeal, I think the judgment should be reversed and a new trial ordered with costs to abide the event.