## PITT *v.* KELLOGG.

*(Supreme Court, General Term, First Department.* October 24, 1890.)

BREACH OF CONTRACT—EXCESSIVE DAMAGES.

In an action to recover the par value of 2,000 shares of stock in a corporation which plaintiff was to assist defendant in organizing, the complaint alleged that defendant declined to fulfill his part of the agreement, and thus prevented the completion of plaintiff's scheme, but there was no evidence as to what the value of the shares would have been if plaintiff's scheme had been carried through, or whether the company, if formed, would have been successful, and it appeared from plaintiff's own testimony that if the company had been formed the shares would not have exceeded in probable value 50 per cent. of their par value. *Held,* that a verdict for the full amount claimed was properly set aside as excessive.

Appeal from circuit court, New York county.

Action by William T. Pitt against Charles Kellogg. There was a verdict for plaintiff for $200,000. From an order of the trial judge, setting it aside as excessive, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Horace Secor, Jr.*, for appellant.    *George H. Fletcher*, for respondent.

DANIELS, J.   The plaintiff brought this action to recover the value of 2,000 shares of stock in a company to be created under the laws of the state of Maryland, for the manufacture of steel tubing, pipes, columns, boiler-flues, shelves, and other articles.   The defendant had obtained patents which it was claimed secured to him certain inventions for manufacturing seamless steel tubing, pipes, columns, and other articles; and it was claimed on behalf of the plaintiff that he had been employed by the defendant to obtain cash subscriptions, amounting to the sum of $200,000, to the stock of a company for manufacturing and dealing in the inventions; that the company was to be formed under the laws of the state of Maryland; that its capital should amount to the sum of $2,000,000, divided into 20,000 shares of the par value of $100 each, and for obtaining these subscriptions that the plaintiff should receive 2,000 shares of the stock of the company.   It was claimed in his behalf that he had succeeded in obtaining persons who were willing to take the stock to the amount of $200,000 in the company, provided the addition of a patent then understood to have been, but which had not in fact been, issued to William H. Appleton should be added to those represented to be owned by the defendant; and that the defendant afterwards declined to fulfill the agreement upon his part, and for that reason the company was not formed, and the stock was not taken by the persons who had been procured through the plaintiff's instrumentality to receive and pay for it.   The evidence which he himself gave as a witness upon the trial directly tended to sustain the truth of these allegations.   But his statements were denied by the defendant, and other evidence was given in his behalf tending to establish the fact that no definite agreement or understanding had been reached with either of the persons expected to subscribe for and take the stock that they would receive or pay for the shares which were to be sold.   The case was submitted to the jury upon the testimony in this manner secured, and from correspondence and documents produced and proved during the progress of the trial.   They found a verdict in favor of the plaintiff for the sum of $200,000, which was the par value of the 2,000 shares the plaintiff claimed he had become entitled to receive, and the court, on motion, set aside the verdict on the ground that it was against the evidence, and also for an excessive amount of damages.   Whether the preponderance of the evidence in favor of the defendant was so great as to justify the order it is not necessary to decide, for there was no evidence produced before the jury which justified the rendition of so large a verdict in favor of the plaintiff.

What the value of the shares of stock would have been if they had been

delivered to the plaintiff under the agreement alleged to have been made was neither directly nor indirectly proved upon the trial; and whether the company, if it had been formed on the basis which had been proposed for its creation, would have been successful or not, was neither proved nor reasonably well indicated by anything which transpired. It was, however, proved that of the patents issued to the defendant himself but one of them was considered to be of any value; and the success of the undertaking, if it had been carried into effect and proved to be successful, seems to have depended more upon the invention of William H. Appleton than upon either one of the patents issued to the defendant. In the disposition of the case the jury must have assumed that the shares would have been worth their par value, but the evidence was far from warranting such a presumption, for it appeared further to be the understanding between these parties that the stock at the time, if the company had been formed and it had been issued, would not have exceeded in probable value the sum of $50 a share. This fact was disclosed by the evidence of the plaintiff himself, for he testified that the persons from whom the subscriptions for the 20,000 shares were expected to be obtained would receive by way of bonus 2,000 additional shares for purchasing and paying for their stock at par; and the correspondence and documents read tend directly to confirm this as the estimated value of the shares. In the letter of the defendant, dated the 13th of September, 1886, the plaintiff was informed by the defendant: "If you wish to raise one hundred thousand dollars on sale of stock at fifty, and do it before it is done by others, we will give you one hundred thousand in stock as a bonus." And: "If the officers of the B. & O. R. R. Co. will take one hundred thousand of the stock you are to place at fifty, we will locate our works on line of their road." And it was further stated in what seems to have been a circular to the subscribers of the stock of the company, or the persons who should become subscribers, that "all stock subscribed for shall be subscribed for at par, and each subscriber shall receive one share of stock for and in addition to each share subscribed for on subscription list." And the same thing was repeated in the receipt of the plaintiff, dated the 30th of April, 1887, which was shortly before the certificate for the formation of the company was signed by these two parties and William H. Appleton, for he there repeats: "I am to procure subscriptions for two thousand shares of the treasury stock of the Kellogg Seamless Tube Company, and for each share subscribed I am to give each subscriber, when his stock is paid up in full, an amount of Mr. Kellogg's stock equal to the amount of treasury stock which he subscribes and pays for." This evidence was in no manner contradicted in any form during the progress of the trial, and so far as it affected the value which should be placed upon the stock, if the company had been formed as it was proposed it should be, places that valuation at a sum no greater than that of 50 per cent. of the par value of the shares. After the alleged failure to fulfill the terms of the agreement relied upon by the plaintiff, a company was formed for the same object in the state of Massachusetts, upon a capital of $4,000,-000, and the same limit was placed upon the sales of the stock of that company. Mr. Appleton was interrogated as to the actual value of that stock, and testified that he considered it to be of value, and that he would not sell his stock in that company for less than 50 cents on the dollar. But this evidence had very little, if anything, to do with the issue in this case, for the inquiry here was as to the probable value of the shares to be received by the plaintiff if the company had been formed under the laws of Maryland having a capital of $2,000,000. As the case was presented to the jury they could not with any reasonable degree of certainty say that the value of the shares which the plaintiff expected to receive would have exceeded the sum of 50 per cent. of their par value. There was no such probability of that as a jury has been permitted to act upon by what was held in *Wakeman* v. *Manu-*

*facturing Co.;* 101 N. Y. 205, 4 N. E. Rep. 264, and the verdict for a larger amount was consequently without any support from the evidence; and it was for that reason, if for no other, the duty of the court to set it aside. *Young* v. *Davis,* 30 N. Y. 134; *Macy* v. *Wheeler,* Id. 231, 237; *Houghkirk* v. *President, etc.,* 92 N. Y. 219; *De Lavalette* v. *Wendt,* 11 Hun, 432. The order which was made was well supported by the deficiency in the evidence upon which the jury acted, and it should be affirmed, with costs.

VAN BRUNT, P. J. I concur in the result. The verdict was grossly excessive, and I do not think that there was any evidence except of the most speculative kind of the value of the stock.

BRADY, J., concurs.