ABRAM WAKEMAN, JR., et al., Appellants, *v.* THE WHEELER & WILSON MANUFACTURING COMPANY, Respondent.

The parties entered into a contract by which defendant agreed that, if plaintiffs should succeed in selling fifty of the defendant's sewing machines to one firm or party in Mexico, during a trip of their agent about to be made, for every fifty machines so sold they should have the sole agency for the sale of said machines in that locality, and defendant agreed to furnish the machines. Plaintiffs' agent made two sales of fifty machines to persons in different localities in Mexico under an agreement that the purchaser should be the sole agent for the sale of the machines in that locality; one of the orders defendant filled, the other it refused, and refused to fill further orders from plaintiffs or their agents, and repudiated the contract. In an action to recover damages for breach of the contract, *held,* that plaintiffs were not confined to the damages sustained by reason of the refusal of the defendant to fill the orders actually given, but were entitled to recover such damages as they could show they had sustained by a total breach of the contract; *i. e.,* the value of the contract, not merely imaginary or speculative damages, but such as were reasonably certain, and such only as actually followed or might follow from such breach, such as a jury could determine approximately upon reasonable conjecture and probable estimates.

A person violating a contract should not be permitted entirely to escape liability because the amount of the damage he has caused is uncertain.

Prospective profits, so far as they can properly be proved, and which would certainly have been realized but for defendant's default, are allowable as damages, although the amount is uncertain.

The rule that damages which are contingent and uncertain cannot be recovered embraces only such as are not the certain result of the breach, not such as are the certain result but uncertain in amount.

The authorities on the subject of the allowance of prospective profits as damages collated and discussed.

*Howe Machine Co.* v. *Bryson* (44 Iowa, 159), disapproved.

Plaintiff offered to show on the trial, that, subsequent to the repudiation of the agreement, defendant established agencies in Mexico, and the number of machines sold through them. This was excluded. *Held* error.

But *held*, that the opinions of witnesses as to the value of the agreement, the profits which it, or any agency established in pursuance of it, could produce, the damages realized, and as to the number of machines they could have sold, were properly excluded.

*Taylor* v. *Bradley* (39 N. Y. 129), limited.

*Mitchell* v. *Read* (84 N. Y. 556), distinguished.

(Argued December 11, 1885 ; decided January 19, 1886.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made March 15, 1883, which affirmed a judgment in favor of plaintiffs, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for an alleged breach of contract, the substance of which as well as the material facts are set forth in the opinion.

*Abram Wakeman* for appellants. The plaintiffs are entitled to recover as damages the value of their contract; that is, what such a privilege as was conferred by their contract, under all the circumstances, was fairly worth. (*Taylor* v. *Bradley*, 39 N. Y. 129, 144 ; *Griffin* v. *Colver*, 16 id. 494.) If there is no more certain method of arriving at the amount, the injured party is entitled to submit to the jury the particular facts and to show the whole situation which is the foundation of the claim and expectation of profit, so far as any detail offered has a legal tendency to support such claims. (1 Suther. on Dam. 113.)

*William H. Williams* for respondent. The alleged contract between the plaintiffs and defendant was by parol, and was not, by its terms, to be performed within one year from the making thereof, and was, therefore, void. (2 R. S. 136, § 2 ;

*Oddy* v. *James*, 48 N. Y. 685; *Dung* v. *Parker*, 52 id. 494; *Childs* v. *Warren Chem. Manfg. Co.*, 13 Weekly Dig. 59.) Defendant's agreement to furnish the plaintiffs' machines at the lowest net gold prices was a contract for the sale and supply of machines, and was void because no note or memorandum in writing was made.    (2 R. S. 136, § 3; *Cook* v. *Millard*, 65 N. Y. 352.)    The jury having found that there was an agreement as alleged, which defendant had violated, the measure of damages was the profits lost on actual sales made by plaintiffs.    Estimates of probable sales furnish no proper criterion for fixing damages.    (*Washburn* v. *Hubbard*, 6 Lans. 1; *Griffin* v. *Colver*, 16 N. Y. 489; *Blanchard* v. *Ely*, 21 Wend. 342; *Mitchell* v. *Cornell*, 44 N. Y. Supr. Ct. 401; *Masterton* v. *Mayor, etc.*, 7 Hill, 62; *White* v. *Miller*, 71 N. Y. 118; *Hamilton* v. *McPherson*, 28 id. 77; *Morey* v. *Mut. Gas-light Co.*, 38 Supr. Ct. 189; *Schooner Lively*, 1 Gall. 315; *Washburn* v. *Hubbard*, 6 Lans. 14; *Cassidy* v. *Lefevre*, 45 N. Y. 562.)    The plaintiffs cannot recover for loss of custom not specially alleged in their complaint.    (*Stapenhorst* v. *Am. Mfg. Co.*, 15 Abb. [N. S.] 355; *Shipman* v. *Burrows*, 1 Hall, 442; *Low* v. *Archer*, 12 N. Y. 282; *Vanderslice* v. *Newton*, 4 id. 130.)    The contract being in part executory, plaintiffs were not entitled to recover damages for defendant's refusal to deliver the machines, unless they alleged in their complaint and proved on the trial that they had performed, or offered to perform, the conditions of the sale on their part.    (Chitty on Cont. [10th Am. ed.] 467; Benj. on Sales, 638, § 562; *Cutler* v. *Powell*, 3 Smith's Lead. Cas. [note to Am. ed.] 23.)    Any effect the termination of the agreement as to the sale of sewing machines might have on the plaintiffs' original business is too remote for a basis for damages in this action.    (*Griffin* v. *Colver*, 16 N. Y. 489; *Hamilton* v. *McPherson*, 28 id. 77; *Cassidy* v. *Le-Fevre*, 45 id. 562.)    Sales the plaintiffs could have made and were prevented from making by the act of defendant are special damages, and to be recovered they should have been alleged; not having been, they cannot be proved.    (*Stapenhorst* v. *Am. Mfg. Co.*, 15 Abb. [N. S.] 355.)

EARL, J.   This action was brought to recover damages for the breach of an agreement made in the city of New York in February, 1878, which is set forth in the complaint as follows: " That if the plaintiffs shall succeed in placing, that is to say, selling, fifty of the defendant's sewing machines to one firm or party in the Republic of Mexico during the next trip of their agent to that country then about to be made, they, the plaintiffs, for every fifty machines so sold shall have the sole agency for the sale of the defendant's sewing machines in that locality and its vicinity in that Republic, and the defendant should furnish to the plaintiffs machines at the lowest net gold prices." The defendant denied the agreement, but the jury found it substantially as alleged; and it is conceded that we must assume here that such an agreement was made.   The plaintiffs at once entered upon the performance of the agreement, purchased a sample machine of the defendant, caused their agent to be instructed in its mechanism and management, and then sent him to Mexico.   After reaching there he sold fifty machines to one Mead of San Louis Potosi, on his promise to Mead that he should be the general agent of the defendant for that locality and its vicinity.   The order for the fifty machines was sent to the defendant and filled by it, and those machines were forwarded to Mexico and paid for.   Shortly thereafter plaintiffs' agent made another sale of fifty machines for another locality in Mexico, and an order for those machines was sent to the defendant, which it absolutely refused to fill.   Plaintiffs' agent procured another order for one machine and sent that to the defendant, which it also refused to fill ; and then it refused to fill any further orders from the plaintiffs or their agents, and absolutely refused to perform and repudiated its agreement. Upon the trial of the action the plaintiffs made various offers of evidence to show the value of their contract with the defendant, the most of which were excluded.   In his charge to the jury the judge held as matter of law that the plaintiffs could recover damages only for the refusal of the defendant to fill the orders actually given ; and the plaintiffs' profits having been shown to be $4 on a machine, their recovery was thus limited to $204.

They excepted to the rule of damages thus laid down, and the sole question for our determination is what, upon the facts of this case, was the proper rule of damages? Were the plaintiffs confined to the damages suffered by them in consequence of the refusal of the defendant to fill the two orders for fifty-one machines, or were they entitled also to recover the damages which they sustained by a total breach of the agreement on the part of the defendant? The judge limited the damages, as stated in his charge, because any further allowance of damages for the breach of the agreement would, as he claimed, be merely speculative and imaginary.

It is frequently difficult to apply the rules of damages and to determine how far and when opinion evidence may be received to prove the amount of damages; and the difficulty is encountered in a marked degree in this case. One who violates his contract with another is liable for all the direct and proximate damages which result from the violation. The damages must be not merely speculative, possible and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract. They may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they cannot be allowed. They are nearly always involved in some uncertainty and contingency; usually they are to be worked out in the future, and they can be determined only approximately upon reasonable conjectures and probable estimates. They may be so uncertain, contingent and imaginary as to be incapable of adequate proof, and then they cannot be recovered because they cannot be proved. But when it is certain that damages have been caused- by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. It is not true that loss of profits cannot be allowed as damages for a breach of contract. Losses

sustained and gains prevented are proper elements of damage. Most contracts are entered into with the view to future profits, and such profits are in the contemplation of the parties, and so far as they can be properly proved, they may form the measure of damage. As they are prospective they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy. It is usually his right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it, and then it is for the jury, under proper instructions as to the rules of damages, to determine the compensation to be awarded for the breach. When a contract is repudiated the compensation of the party complaining of its repudiation should be the value of the contract. He has been deprived of his contract, and he should have in lieu thereof its value, to be ascertained by the application of rules of law which have been laid down for the guidance of courts and jurors.

These rules will be illustrated and limited by a few cases, some of which are quite analogous to this, to which attention will now be called. In *Masterton* v. *Mayor, etc.* (7 Hill, 61), NELSON, Ch. J., said : " When the books speak of the profits anticipated from a good bargain as matter too remote and uncertain to be taken into the account in ascertaining the true measure of damages, they have reference to dependent and collateral engagements entered into on the faith and in expectation of the performance of the principal contract. * * * But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties stand upon a different footing * * * It is difficult to comprehend why, in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages." In *Bagley* v. *Smith* (10 N. Y. 489), it was held that one partner could maintain an action at law against the other for a breach of the partnership articles in dissolving before the period therein limited ; that the damages in such an action are the profits which would have ac-

crued to the plaintiff from the continuation of the partnership business and which are lost by the unauthorized dissolution, and that evidence of the actual gains of the partnership during its continuance is admissible as an element in determining the value of the prospective profits. JOHNSON, J., writing the opinion said: "The object of commercial partnerships is profit. This is the motive upon which men enter into the relation. The only legitimate beneficial consequence of continuing a partnership is the making of profits. The most direct and legitimate injurious consequence which can follow upon an unauthorized dissolution of a partnership is the loss of profits. Unless that loss can be made up to the injured party it is idle to say that any obligation is imposed by a contract to continue a partnership for a fixed period. The loss of profits is one of the common grounds, and the amount of profits lost one of the common measures of the damages to be given upon a breach of contract," and that "it is very true that there is great difficulty in making an accurate estimate of future profits. This difficulty is inherent in the nature of the inquiry. We shall not lessen it by shutting our eyes to the light which the previous transactions of the partnership throw upon it. Nor are we the more inclined to refuse to make the inquiry by reason of its difficulty, when we remember that it is the misconduct of the defendant which has rendered it necessary." In *Taylor* v. *Bradley* (39 N. Y. 129), the action was to recover damages for the total breach by the defendant of a contract to let a farm to the plaintiff for three years, each party to furnish part of the stock, seeds, tools, etc., the plaintiff to occupy and work the farm and have certain specified supplies for his family, and all proceeds to be divided equally, and it was held that the plaintiff was entitled to recover as damages the value of the contract, that is, what such a privilege of occupancy and working the farm, subject to the conditions of the agreement and under all the contingencies which were liable to affect the result, was worth. WOODRUFF, J., writing the opinion, said: "To my mind the only rule which will do justice to the parties is that the plaintiff is entitled to the value of his contract; he was

entitled to its performance; it is broken; he is deprived of his adventure; what was this opportunity which the contract had apparently secured to him worth? To reap the benefit of it he must incur expense, submit to labor and appropriation of his stock. His damages are what he lost by being deprived of his chance of profit." An opinion in the same case by Judge GROVER is reported in 4 Abb. Ct. of App. Dec. 363, in which he said: "An examination of the cases will show that the courts have been endeavoring to establish rules by the application of which a party will be compensated for the loss sustained by the breach of the contract; in other words, for the benefits and gains he would have realized from its performance, and nothing more. It is sometimes said that the profits that would have been derived from performance cannot be recovered; but this is only true of such as are contingent upon some other operation. Profits which would certainly have been realized but for the defendant's default are recoverable. * * * It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency whether such gain or benefit would be derived at all. * * * It is sometimes said that speculative damages cannot be recovered because the amount is uncertain; but such remarks will generally be found applicable to such damages as it is uncertain whether sustained at all from the breach. Sometimes the claim is rejected as being too remote. This is another mode of saying that it is uncertain whether such damages resulted necessarily and immediately from the breach complained of. The general rule is that all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain. The latter description embraces, as I think, such only as are not the certain result of the breach, and does not embrace such as are the certain result, but uncertain in amount;" that "the plaintiff will be fully compensated by recovering the value of his bargain. He ought not to have more, and I think he is not precluded from recovering this by any infirmity in the law in ascertaining its amount." In *Schell* v. *Plumb* (55 N. Y. 592), it was held that an agreement by one

party to support another during life is an entire continuing contract, and that upon a total breach thereof the latter may recover full and final damages, not only the expenses of support up to the time of trial, but all the prospective expenses during life, and that the Northampton Tables are competent evidence as to the probable duration of life. GROVER, J., writing the opinion, said: "The counsel for the appellants insists that such cannot be the rule, for the reason, as he insists, that it is impossible to ascertain the damages, as the duration of life is uncertain, and a further uncertainty arising from the future physical condition of the person. \* \* \* \* It may be further remarked that in actions for personal injuries the constant practice is to allow a recovery for such prospective damages as the jury are satisfied the party will sustain notwithstanding the uncertainty of the duration of his life and other contingencies which may probably affect the amount." In *Dennis v. Maxfield* (10 Allen, 138), it was held that if a written contract by which the master of a whaling ship is employed provides that he shall have a certain "lay" in the proceeds and also an additional compensation depending upon the amount of the cargo, and he is wrongfully discharged by the owners before the expiration of the contract, he may recover as a part of his damages his share of the earnings of the ship both before and after his removal. BIGELOW, Ch. J., writing the opinion and speaking of the earnings of the ship, said: "They are undoubtedly in their nature contingent and speculative and difficult of estimate, but being made by express agreement of the parties of the essence of the contract, we do not see how they can be excluded in ascertaining the compensation to which the plaintiff is entitled. Would it be a good bar to a claim for damages for breach of articles of copartnership that the profits of the contemplated business were uncertain, contingent and difficult of proof, and could it be held for this reason that no recovery could be had in case of a breach of such a contract? Or in an action on a policy of insurance on profits, would it be a valid defense in the event of loss to say that no damages could be claimed or proved because the subject of insurance was merely speculative,

and the data on which the profits must be calculated were necessarily inadequate and insufficient to constitute a safe basis on which to rest a claim for indemnity?"

In *Simpson* v. *London & N. W. R. Co.* (L. R., 1 Q. B. D. 274), the plaintiff, a manufacturer, who was in the habit of attending agricultural shows to exhibit samples of his goods, and made profit by the practice, delivered them upon a show-ground where he had been exhibiting them, to the receiving agent of the defendant, a railroad company, to be carried by a particular day to a show-ground at another place where a similar show at which he intended to exhibit was to be held; but nothing was expressly said about the intention of the plaintiff. The samples did not arrive until after the day stipulated and when the show was over; and the plaintiff lost several days in going to meet them and waiting for them. In an action for the breach of contract a verdict was given for damages which included a sum for loss of time or loss of profit; and it was held that the purpose of the plaintiff to exhibit was within the contemplation of the parties to the contract; that the plaintiff was entitled to the damages, on the ground that loss of profit was a natural and probable result of the failure of that purpose; and that no evidence was necessary of his prospect of making profit at the particular show in question. COCKBURN, C. J., said: "As to the supposed impossibility of ascertaining the damages, I think there is no such impossibility; to some extent, no doubt, they must be matter of speculation, but that is no reason for not awarding any damages at all." MELLOR, J., said: "As to the difficulty of ascertaining the amount of profits which the plaintiff can be supposed to have lost, that is not a matter upon which we have to trouble ourselves." FIELD, J., said: "As to the difficulty of ascertaining the profits which the plaintiff can be considered to have lost, a sufficient answer is that it must be assumed that the plaintiff would make some profits." In *Jaques* v. *Millar* (L. R., 6 Ch. Div. 153), the plaintiff agreed with the defendant to take a lease of premises belonging to defendant for the purpose, as the defendant knew, of carrying on a trade which the plaintiff was about to commence. In

consequence of the defendant's willful refusal to fulfill his agreement, the plaintiff was unable for fifteen weeks to commence his trade ; and it was held that, in addition to judgment for specific performance of the agreement, damages must be awarded in respect to plaintiff's loss of profits from his work during the fifteen weeks ? To the same effect are the following cases : ( *White* v. *Miller,* 71 N. Y. 118 ; *Mitchell* v. *Read,* 84 id. 556 ; *Danolds* v. *State,* 89 id. 36 ; *Hoy* v. *Gronoble,* 34 Penn. 9 ; *Garsed* v. *Turner,* 71 id. 56 ; *McNeil* v. *Reid,* 9 Bing. 68 ; *Fletcher* v. *Tayleur,* 17 C. B. 21.)

In conflict, we think, with these authorities is the case of *Howe Machine Co.* v. *Bryson* (44 Iowa, 159). In that case a party made a contract with the general agents of a sewing machine company, by the terms of which he was to rent a room, provide himself with a team, and furnish other necessary means for the sale of machines, and devote his time thereto, the agents agreeing to furnish him with all the machines he could sell at a price twenty-five per cent below the retail rate. The party performed his undertaking but the machines were not supplied as agreed ; and it was held that the measure of damages was the value of the time lost as the result of the breach, without reference to the profits which might have been realized if the contract had been performed. Two of the five judges dissented, and we concur with them.

Under the Civil Damage Act (Chap. 646 of the Laws of 1873), and under the acts allowing the next of kin of one whose death has been caused by the wrong or carelessness of another to recover damages for such death, the amount of damages are exceedingly uncertain, problematical and contingent, and yet they must be left to the determination of a jury upon such facts as can be proved. (*Etherington* v. *R. R. Co.,* 88 N. Y. 641 ; *Houghkirk* v. *D. & H. C. Co.,* 92 id. 219.)

It is quite clear that the rules of damages having the sanction of these authorities were violated upon the trial of this action. The plaintiffs had the right under their agreement to establish agencies for the sale of defendant's machines anywhere in Mexico where they could sell fifty machines. An agency, when

thus established, was to be exclusive, and was to have some permanency. It could not be broken up at the will of the defendant without some default on the part of the plaintiffs. That the agreement had some value to the plaintiffs is very clear, and of that value, whatever it was, they were deprived by the act of the defendant. It is quite true that that value, or in other words, the damage caused to the plaintiffs by the total breach of the agreement by the defendant, is quite uncertain and difficult to be estimated. But the difficulty is not greater than it was in several of the cases above cited. There are some facts upon which a jury could base a judgment, not certain nor strictly accurate, but sufficiently so for the administration of justice in such a case. The agent whom plaintiffs sent to Mexico was apparently intelligent, capable and well acquainted with Mexico. Machines could be delivered there, for about $30 per machine, and could then be sold at retail for about $125. The profit of the plaintiffs on each machine was about $4. Plaintiffs' agents readily made sales of one hundred and one machines, and were about to make other sales. One of defendant's agents subsequently sold in a single city twenty machines in six months, at $125 each. The plaintiffs had established two agencies, and to the value of such agencies at least they were entitled. Mead, who had one of the agencies, testified, that he had made arrangements with several parties to sell the machines; that he had all the facilities for carrying on an extensive and profitable business, and was well acquainted with the country. The population of several of the Mexican cities in which plaintiffs' agent was engaged in establishing agencies was shown. From all these and other facts proved it cannot be doubted that the plaintiffs suffered damages to at least several hundred dollars, and they should not have been deprived of the damages which they made to appear because they could not make clear the full amount of their damages. All the facts should have been submitted to the jury with proper instructions, and their verdict, not based upon mere speculation and possibilties but, upon the facts and circumstances proved, would have approached as near the proper

measure of justice as the nature of the case and the infirmity which attaches to the administration of the law will admit. In 1 Sutherland on Damages, 113, it is said: "If there is no more certain method of arriving at the amount, the injured party is entitled to submit to the jury the particular facts which have transpired, and to show the whole situation which is the foundation of the claim and expectation of profits so far as any detail offered has a legal tendency to support such claim."

The trial judge also erred in excluding evidence which would have given the jury some aid in estimating the damages. The plaintiffs made persistent efforts to show that subsequently to the repudiation of its agreement, the defendant established agencies in Mexico, and the number of machines sold through such agencies. This evidence was, upon the objection of the defendant, excluded. We think it should have been received. It would have shown the market for these machines there, and the facility with which they could be sold, and would have had some tendency to show the extent of business the plaintiffs could have done there and the value of their agreement.

We think the opinions of witnesses as to the value of the agreement, as to the profits which it or any agency established in pursuance of it could produce, as to the damages plaintiffs realized, and as to the number of machines they could have sold, were properly excluded. This was not a case for expert or opinion evidence. There was no certain basis of facts proved, or facts assumed upon which an opinion could be based. The conflicting opinions of interested witnesses, selected because of their favorable opinions, instead of aiding the jury would probably add to their embarrassment. The safer rule in all such cases is to exclude opinions and receive the facts, and then leave the matter for the determination of the jury. They may not have any certain basis upon which to rest their judgments, but that cannot be helped. They are supposed to be disinterested and must apply their experience and common sense to the facts proved and reach the best results they can. Our views as to opinion evidence were so fully expressed in *Ferguson* v. *Hubbell* (97 N. Y. 507), that they need no restate-

ment here.   We have no means of knowing that the views expressed by Judge WOODRUFF in *Taylor* v. *Bradley* (*supra*), as to the proof of the damages, by the estimates of witnesses, were coincided in by his associates.   They were not necessary to the decision of that case, and we are not prepared to assent to them.   In *Mitchell* v. *Reed* (*supra*), the opinions of witnesses as to the value of certain leases, based upon certain facts assumed, were received.   No question was made at any stage of that case that the opinions were not competent.   The rule as to opinion evidence was liberally applied in that case, and we are inclined to think properly.   There was some certain basis for the foundation of opinions by experts in reference to the worth of property which had salable value.

We have not considered the bearing of the statute of frauds upon this case, as no point or reference to it was made upon the trial.

Our conclusion, therefore, is that this judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.