Learned, P. J.
(dissenting). The referee finds as a fact that the defendant entered into an agreement with plaintiffs whereby they were employed to prepare preliminary sketches or studies for a dwelling house, and that they completed and furnished these to defendant February 3, 1886, that the value thereof was $107.50.
This finding is not without evidence. The estimated cost of the house was $16,750 One witness estimates such services as worth one per cent on the estimated cost. The sketches were prepared by plaintiff Wheeler and by McClure, in plaintiffs employ. Mr. Fuller states the value of his own services at ten dollars per day, and that of Mr. Wheeler’s at six dollars per day. The time was about six days. It would hardly be just to limit the value of these services to the time taken by Wheeler and McClure in making these sketches. The skill and time of Fuller, who seems to have been the principal architect may justly be consid *111 ©red. And they are doubtless considered in the statement made by one witness that such sketches were worth one per cent on the estimated cost. The referee further finds that on the 3d of February, 1886, the defendant entered into a contract with plaintiffs by which she employed them as architects to prepare and pomplete for defendant plans, details and specifications for a house and to obtain estimates and let the contracts. That on the 5th of February defendant discharged plaintiffs and elected to terminate her contract; that their damages thereby are $350.
There is evidence that on the 3d of February, defendant directed plaintiffs to go on and prepare, plans and specifications, get the estimates and have the work started (or let) as soon as possible. It is claimed by defendant that there is no evidence that this contract included the making of details and the letting of contracts. The testimony of the plaintiff and defendant differ in this respect. The defendant says she directed Fuller to prepare plans of the interior,' plans of the outside work. Sow on the evidence it might be found that the contract was that plaintiffs were to complete all the plans and specifications and necessary details, and to obtain estimates. The “details” are evidently a matter necessary for the guidance of the builder, and if the plaintiffs were employed to make plans for the interior and plans for the outside work, it is hardly to be understood that they were not to make the “ details ” needed' for the building. So that we cannot say that the referee’s finding is without evidence on this point.
That the defendant on the 4th directed plaintiffs to delay, and on the 5tli directed them to stop work is not in question.
It seems then that the referee was justified in findirg that there was a contract and that it was broken by defendant. Sherwood v. Hauser, 94 Y. Y., 636.
What then are the damages, if any?
The price for plaintiffs’ work was not fixed at a gross sum. In the conversation plaintiff Fuller, was asked what the charge would be, and he answered five per cent, on the cost of the house, which he stated then was estimated at $16,750. Of course as the defendant prevented the building of the house under these plaintiffs as architects, it cannot be told exactly what it would have cost. But it may fairly be understood that the price of the services was to be five percent on $16,750. It does not lie with the defendant to object that the actual cost of the house cannot be ascertained, for she prevented.
In Wakeman v. Wheeler & W. M. Co., 101 N. Y., 205. the subject of recovering prospective profits was discussed. It was held that damages which were the certain result of the breach can be recovered, although they are uncertain in amount; that one who violates his contract is liable for all the direct and proximate damages which result; that losses sustained and gains prevented are proper elements of dam *112 •age. In that case the damages were peculiarly uncertain in amount. For the contract broken was that plaintiff should have the sole agency for the sale of machines in every place where he .should succeed in selling fifty machines to one party. Evidently it was quite uncertain how many machines the plaintiff would be able to sell if made sole agent for the place. Yet it was held that the damages could be recovered.
The question then in this present case must be what profits would the plaintiffs have made under this contract.
The percentage mentioned by Mr. Fuller appears from his -further testimony to have included superintendence during the building. And it is not found by the referee that superintendence was a thing included in the contract. The testimony of another witness tended to show that the value of preliminary studies, general drawings and specifications was two and one-half per cent, and with details three and one-half per cent. At three and one-half per cent on the estimated costs this value would be $586.25, from which must be deducted the value of preliminary studies, already allowed by the referee, leaving $418.75. The referee has allowed $250 for profits. It was shown that the work would be done by an employee of plaintiffs taking him some five weeks and that his labor was worth $2.50 to $3.00 per day. Also, that $8.00 worth of work had been done before the countermand.
The referee has not stated in detail how he arrived at $250 as the loss of profits. But what is above stated will show that his amount is neither without or against evidence, as a matter of fact.
As to the questions of law the case above cited seems strongly in point, and we recurto it. It was there remarked that when a contract is repudiated, the compensation of the party complaining of the repudiation should be the value of the contract. And while the court said that the opinions of witnesses should not be taken, they said that the facts should be shown and from those facts the jury should judge what the actual loss of profits had been to the plaintiff. That cause was followed here. The exact cost of the building could not be known because the defendant had prevented its erection. So in the case cited the exact number of machines which that plaintiff would have sold could not be ascertained because the defendant had prevented the sale. But there was evidence here what the building would probably have cost and that furnished a means of computing what the plaintiffs would have received. How much of such receipts would have been profits was also shown, and hence the result was reached.
Whether these damages might have been reduced by showing- that plaintiffs had been otherwise and profitably engaged, we need not inquire. Such evidence is not'in the case.
J udgment affirmed, with costs.