(7 App. Div. 258)

### CRITTENDEN v. JOHNSTON.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

1. CONTRACTS—INTERPRETATION—"SHARES."
   A contract to conduct business "on shares" means that the parties shall share equally.

2. DAMAGES—MEASURE FOR BREACH OF CONTRACT.
   Measure of damages for breach of contract by which defendant agreed with plaintiff to manage his hotel for a certain period on shares is the amount of profit plaintiff would have received under the contract if she had been permitted to carry it out.

Appeal from trial term, New York county.

Action by Mary E. Crittenden against Robert A. Johnston to recover damages for the alleged breach of a contract. From a judgment entered on a verdict in favor of plaintiff for $450 and costs, amounting in all to $622.97, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

The action was brought to recover damages for the breach of a contract for the running of an hotel or boarding house. In 1893 the defendant was the owner and in possession of an hotel or boarding house at Mt. St. Vincent Station, in the city of New York, known as the "Forrest House." The plaintiff was a woman, who had for some years been engaged in keeping boarding houses. In the complaint it was alleged that the parties entered into a parol agreement in the month of July, 1893, that the plaintiff should take possession of the Forrest House, and manage and conduct it for the balance of the summer season, and until about the 1st of November of that year, and should receive for her services one-half of the net profits of the business; that, pursuant to the agreement, plaintiff went into the house, and made some preparations to open the same and carry on the business, but, after she had been engaged for about two weeks in preparing to open the house, the defendant refused to allow the house to be opened by the plaintiff, or to allow the plaintiff to carry on the business, and refused to carry out the agreement, and that by reason of his breach of the agreement she suffered damage, which she demanded judgment for. The answer was substantially a denial of the making of the agreement, and of any damages resulting from the breach thereof. Upon the trial the plaintiff gave evidence tending to show an agreement was made, but, instead of testifying in express terms that she was to have for her services the one-half of the net profits of the business, she testified merely that she was to conduct the business on shares, without expressly stating the particular share of each. The defendant, while conceding that there was talk about her running the house for a share of the profits, denied that there was any agreement made to that effect. He testified that the talk about her conducting the business "on shares" involved the plaintiff's putting in some furniture, and she never brought the furniture, and the agreement was not, therefore, perfected. The damages sought to be recovered were based

upon the profits that would have been made in the business, and evidence as to what the profits would have been was given by both parties. The learned trial court submitted the case to the jury upon the questions whether the agreement was made as alleged by plaintiff, and, if so, what damages she suffered by its breach, and the verdict rendered by the jury was for $450. The defendant moved to dismiss the complaint for a failure of proof as to the making of the agreement alleged and as to damages. The motion was denied, with exception. There was a motion for a new trial upon the minutes on all the grounds specified in section 999 of the Code, which was also denied.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

David & Benjamin Scharps, for appellant.
George H. Fletcher, for respondent.

WILLIAMS, J. The question as to whether the agreement was made as testified by plaintiff was one of fact for the jury. The only question as to the agreement itself is whether an agreement to conduct the business "on shares" was, in effect, one providing that the plaintiff and defendant should share equally in the net profits of the business. No such question as this was suggested in express terms at the trial. It was not suggested that there was any variance between the agreement sworn to by the plaintiff and the one alleged in the complaint. The learned trial court submitted to the jury the question of fact whether the agreement upon which the action was based was entered into. Nothing was said by him as to the meaning of the words "on shares," as used by the parties, and there was no request by the defendant upon that subject. If there had been such suggestion made, it would very likely have been a question to be determined by the jury, under all the circumstances, what the intention of the parties was in the use of the phrase "on shares," and we think the jury would have been justified then in finding that the meaning of the phrase in the contemplation of the parties was "equal shares"; and the defendant cannot now complain, in the absence of any request on the subject, that the question as to the meaning of the phrase was not specifically submitted to the jury. The jury, under the charge of the court, did find that the agreement alleged in the complaint was entered into by the parties, and we see no reason to disturb the verdict on this subject. We think the meaning of the phrase, within the intention of the parties, was "equal shares" of the profits of the business.

There were various exceptions taken to the admission of evidence upon the question of damages, and to the charge and refusals to charge upon this subject. In Bagley v. Smith, 10 N. Y. 489, which was an action brought to recover damages for the breach of an agreement of co-partnership by one of the co-partners in terminating the co-partnership before the expiration of the term agreed upon, it was held that the damages recoverable were the loss of the plaintiff's share of profits which the co-partnership would have made had it continued to the end of the term. And while it was conceded there were difficulties in ascertaining and estimating

such prospective profits, yet the court would not refuse to make the inquiry as to such profits, especially as it was the misconduct of the defendants that rendered the inquiry necessary.　In Devlin v. Mayor, etc., 63 N. Y. 8–25, which was an action to recover damages for the breach of an executory contract for street cleaning in the city of New York, it was said:

"The measure of damages is too well settled by authority to require discussion, and the rule adopted by the court commends itself for its simplicity, as well as equity and good sense.　It secures to the injured party as compensation only such advantages as the parties must be deemed to have had in their minds in making the agreement, and excludes all contingent and uncertain profits; everything that may not reasonably have been supposed to have been within the contemplation of the contracting parties, and would not naturally follow such breach.　The party who has been wrongfully deprived of the gains and profits of an executory contract may recover as an equivalent and by way of damages the difference between the contract price, the amount he would have earned and been entitled to recover on performance, and the amount which it would have cost him to perform the contract."

And in Wakeman v. Manufacturing Co., 101 N. Y. 205, 209, 210, 4 N. E. 264, which was an action to recover damages for the breach of an executory contract between an agent and a sewing-machine company for the sale by the agent for the company of sewing machines, it was held that prospective profits, so far as they are provable, and which would certainly have been realized but for the defendant's default, were recoverable as damages, although the amount was uncertain; and that the rule that damages which were contingent and uncertain could not be recovered embraced only such as were not the certain result of the breach, and not such as were the certain result of the breach, but uncertain in the amount only. Earl, J., said:

"When it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach.　A person violating his contract should not be permitted to entirely escape liability because the amount of damages which he has caused is uncertain.　It is not true that loss of profits cannot be allowed as damages for a breach of contract.　Losses sustained and gains prevented are proper elements of damages.　Most contracts are entered into with the view to future profits, and such profits are in the contemplation of the parties, and so far as they can be properly proved they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical; and yet, on that account, a person complaining o. breach of contract is not to be deprived of all remedy.　It is usually his right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it; and then i. is f r t le jury, under proper instructions as to the rule of damages, to determine the compensation to be awarded for the breach.　When the contract is repudiated, the compensation of the party complaining of its repudiation should be the value of the contract.　He has been deprived of his contract, and should have, in lieu thereof, its value, to be ascertained by the application of the rules of law which have been laid down for the guidance of courts and juries."

The court reviewed the authorities in this state and elsewhere bearing upon this subject, and the rules laid down in this case have never since been questioned.

We think the case we are considering was tried and submitted to the jury within the law as laid down in the cases to which we have

referred. Evidence was given on both sides as to the circumstances surrounding the making of the agreement and its breach, and as to the amount of profits that would probably have been realized from the carrying on of the business under the agreement. The court instructed the jury that in arriving at the amount of damages they should consider what profits, if any, would have been made, whether the venture—the business—would have proved successful, and should award only such damages as would fairly compensate the plaintiff for her loss of prospective profits by reason of the defendant's breach of the agreement. The jury rendered a very moderate, reasonable verdict, a verdict fairly within the evidence. The plaintiff had been for many years in the business of conducting a boarding house, and was an expert, who could give an opinion as to the probable expense necessary in conducting the house in question. The full capacity of the house was 50 boarders. There were 20 double rooms and 8 single rooms. Estimating, as plaintiff did, the single rooms, with board, at $12 per week each, and the double rooms $25 per week each, the total receipts per week would have been $596. And estimating the expenses as $812 per month or about $190 per week, the net profits per week would have been $400 or thereabouts. From August 1, 1893, to November 1, 1893,—3 months, or about 13 weeks,—the net- profits would have been $5,200, of which plaintiff's one-half would have been $2,600. These were the plaintiff's best figures, and were based upon every room being filled all the time at a good round price per week, and very likely some expenses would have been necessary which were overlooked. The evidence on the part of the defendant showed an entirely different estimate of net profits. The charge for rooms and board was put at five to nine dollars per week, and it was said the rooms would not have been full all the time, and that the season was practically from June 1st to September 1st. In connection with this evidence, some idea of the defendant's estimate of the earning capacity of the house was afforded by the consideration that he asked $2,500 per year rent for the property. The verdict of the jury was $450, which was, in effect, arrived at on the basis of the net profits for the 3 months, or 13 weeks, being $900, or $300 per month, or $70 per week. The verdict was, as we have said, moderate, reasonable, and fairly within the evidence.

The judgment and order appealed from should be affirmed, with costs. All concur.