mistake could only be corrected by its direct application to the defendant for repayment. In any aspect of the case, the payment was made under a mistake of fact, and there is nothing in the manner in which it was made which should prevent a recovery.

The court below permitted the plaintiff to put in evidence the rules of the clearing house under which business was done in that institution. It is complained that these rules are not binding on the plaintiff. I suppose that is very true. No evidence is binding on anybody unless it is in its nature conclusive. What the defendant means, I suppose, is that they are not competent evidence against it, but in that the defendant is very much mistaken. It appears that the plaintiff and the defendant, although not members of the clearing house, each had employed a member to act as its agent there to transact its business with other banks. As each had assumed in that way to have its business done through a member of the clearing house as its agent, it must be deemed to have consented that the business thus to be done should be done in the way prescribed by the rules of that institution. Therefore such rules were clearly competent evidence to show what was done, and how the transaction was to take place.

The case of Overman v. Bank, 30 N. J. Law, 61, and Id., 31 N. J. Law, 563, does not bear upon that proposition. In that case, Overman endeavored to charge the defendant as the drawee of a check, because it had failed to return the check after it was presented, in accordance with the rules of the New York Clearing House. But the court held, not that the rules were not competent evidence,—for that question was not presented,—but that the rules of the New York Clearing House, although they might establish a custom or usage as between its members, did not establish any usage, as between two people who were not members of the clearing house, with respect to the presentation and payment of checks drawn in favor of one of those persons as against the other.

This seems to dispose of all the questions presented here, and the result of it is necessarily to affirm the judgment. Judgment affirmed, with costs. All concur.

---

(61 App. Div. 58.)

STOWELL v. MANUFACTURERS' & MERCHANTS' INS. CO. OF PITTSBURGH, PA.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—BREACH—DAMAGES.

    An insurance agent whose contract of employment is wrongfully terminated by the company is entitled to damages for prospective commissions on business he might have done if the contract had not been broken.

2. SAME.

    An insurance company contracted with plaintiff as a general agent, the contract to terminate in five years, or, by mutual consent, prior to that time, with the provision that, if the company should retire from business before the termination of five years, it would terminate the contract upon transferring to plaintiff the local agencies and the business of said agencies, and that 90 days' notice of termination of contract should be given. The company reinsured its risks, and agreed with the reinsuring company to transfer to it all that it had previously agreed to transfer and

deliver to plaintiff, which contract it performed without in any manner protecting plaintiff's interest. *Held*, that plaintiff was entitled to recover damages for such breach of contract.

McLennan, J., dissenting.

Appeal from trial term, Monroe county.

Action by Galvin L. Stowell against the Manufacturers' & Merchants' Insurance Company of Pittsburgh, Pa., for the breach of a contract of employment. From a judgment of the supreme court in favor of the plaintiff, both parties appeal. Modified and affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Wm. F. Cogswell, for plaintiff.

George F. Yeoman, for defendant.

WILLIAMS, J. The judgment appealed from should be modified by including therein the item of $2,500 damages not covered by the direction of a verdict by the trial court, and, as so modified, affirmed, with costs of the appeal to the plaintiff. The action was brought to recover damages for the violation of a contract between the parties dated June 4, 1895, whereby the plaintiff was appointed manager for the defendant to effect insurance, and with authority to appoint sub-agents under him, subject to approval by defendant, in and for New York state (excepting Metropolitan district) and the state of Pennsylvania (excepting Allegheny and Philadelphia counties), and such oth-er territory as might at any time be designated by defendant, upon the terms and conditions therein specified, which need not be recited here in detail. It was agreed that the contract might be terminated at the end of five years, or, by mutual consent, previous to that time, and without any liability on the defendant's part beyond the commissions actually earned at the closing up of the said agency; and then the contract closed with the following clause, upon which this action is founded, viz.:

"It is hereby further understood and agreed that, in case the said company shall be dissolved, and retire from business, before the termination of five years from the date hereof, then said company shall have the right to terminate this contract upon the conditions that all local agencies and the business of said agencies shall be handed over and transferred to said C. L. Stowell by said company, and that ninety (90) days' notice on the part of said company shall be given to said C. L. Stowell before this contract shall be terminated by reason of such retirement."

The business was carried on satisfactorily by the parties under this contract from its date, June 4, 1895, until April 4, 1899, when the defendant entered into a contract with the Fidelity Fire Insurance Company of Baltimore, whereby the Fidelity Company reinsured from April 1, 1899, all outstanding policies and risks of defendant, and assumed all liability under all policies written by defendant prior to May 1, 1899, and defendant agreed to pay the Fidelity Company 40 per cent. of the gross pro rata premiums on all policies in force April 1, 1899, to be paid in full not later than May 1, 1899; and whereby it was agreed that the defendant might and should continue to issue its policies and do business in its own name until May 1, 1899, but all business so done or policies so written should be on account of, for the

benefit of,˙and under the direction of the Fidelity Company, or its
duly-authórized agent; and the defendant.further agreed to retire
from business on the 1st day of May, 1899, and to wind up its busi-
ness and affairs, and to dissolve itself as an active going concern as
soon thereafter as may be, and agreed to transfer and deliver to the
Fidelity Company all its good will, right, title, and interest in and.to
its business, daily reports, indorsements, registers, and books of rec-
ord; and it was further agreed that all reinsurances and contracts or
policies of insurance which defendant had theretofore effected with
other companies for the purpose of reducing its liability should be
transferred to the Fidelity Company, and defendant agreed to exe-
cute any and all proper instruments of transfer or assignments of the
same, but, in case any company so reinsuring objected to such trans-
fer, then defendant agreed to cancel such reinsurance and pay to the
Fidélity Company the unearned premium thereof.　It appears from a
letter written by plaintiff, put in evidence by defendant, that April 2,
1899, the Fidelity. Company, by night message, notified plaintiff that it
had reinsured defendant, and directed plaintiff to continue writing
defendant's policies conservatively, etc., and send dailies to Pittsburg,
and that the Fidelity Company would see plaintiff shortly regarding
general agency.　The dates of the contract and of this letter and.mes-
sage do not quite harmonize, but that is, perhaps, not very material.
The Fidelity Company promptly notified plaintiff of its contract with
defendant, but only in a general way.　The plaintiff at once advised
the Fidelity Company of his contract with defendant for five years
from June 4, 1895, and asked for an explanation of the Fidelity Com-
pany's message, saying, if it was intended that defendant should re-
tire˙from business, it was important he should be placed in posses-
sion of all the facts, so as to know exactly how to deal with his local
agents.　There were correspondence and personal interviews between
the Fidelity Company and the plaintiff after this, and during the
month of April, 1899, with reference to the making of a contract by
which the plaintiff should continue in the employ of that company in
a similar capacity to that occupied by him with defendant, all of which
terminated, however, May 1, 1899, in a refusal by the Fidelity Com-
pany to make any contract with the plaintiff.　Nothing was said by
defendant to plaintiff during the month of April with reference to its
going out of business, and notice of its election to terminate the con-
tract was not given the plaintiff until May 4, 1899.　This action was
begun May 3, 1899.　Then a notice was given to the effect that the
defendant elected to terminate the contract in accordance with the
terms of the last paragraph thereof, and notified plaintiff that at the
expiration of the 90 days from the date of the notice their contractual
relations would cease.　To this notice the plaintiff replied May 4,
1899, by letter, that he understood the defendant had sold its busi-
ness to the Fidelity Company, and had thus put it out of its power to
comply with the part of the contract requiring defendant to hand over
and transfer to him the local agencies and business of such agencies,
asked for a full explanation as to defendant's contract with the Fi-
delity Company, and inquired whether any provision had been made
for plaintiff's protection, and what position the Fidelity Company

would take in respect to the business of plaintiff's territory, etc. No answer seems to have been made to this letter by defendant, but later, and by letter of May 13, 1899, the defendant directed plaintiff to cancel a large number of policies taken by him, being all risks commencing after May 1, 1899. The defendant never in any way made any effort to turn over the business and agencies to plaintiff, but, on the contrary, carried out its contract fully with the Fidelity Company, as we may infer from the evidence and correspondence put into the case by defendant. Indeed, the answer admits the making of the contract with the Fidelity Company in subdivision 6, and then in subdivision 7 merely denies that it handed over the business of plaintiff's territory to the Fidelity Company, or that it turned over any books or records thereof, except such as were essential to the carrying out of the contract between defendant and the Fidelity Company. At the close of the evidence, the court, upon a request by the defendant for a direction of a verdict, reserved his decision, and submitted to the jury two questions as to damages, viz.:

"(1) What sum of money is a fair compensation to the plaintiff for the damages he sustained by the neglect and refusal of the defendant to continue the business of insurance as provided by the contract between the plaintiff and the defendant during the period of ninety days from the 1st day of May, 1899?" to which the jury answered, "$469.98." "(2) What sum of money is a fair compensation to the plaintiff for the damages he sustained by the neglect and refusal of the defendant to comply with the provision of the contract which requires the defendant upon the termination thereof to transfer and hand over to the plaintiff all existing local agencies and the business of the agencies which the plaintiff had appointed under the contract?" to which the jury answered, "$2,500."

Upon the rendering of this verdict the court denied defendant's motion for a direction of a verdict for defendant, and denied a motion made by plaintiff for a direction of a verdict for both items of damages, and directed a verdict for the first item of damages alone,— $469.98.

We think the court committed no error in directing a verdict for the first item of damages, $469.98. The contract was broken, and the plaintiff was therefore entitled to recover such damages as he sustained. The damages covered and included prospective commissions on business he might have done if he had been permitted to continue in the business according to the terms of his contract; but such damages were allowable, under the decisions of the courts of this state. Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264; Dickinson v. Hart, 142 N. Y. 183, 36 N. E. 801; Trust Co. v. O'Brien, 143 N. Y. 284, 38 N. E. 266; Crittenden v. Johnston, 7 App. Div. 258, 40 N. Y. Supp. 87; Stowell v. Insurance Co., 20 App. Div. 188, 46 N. Y. Supp. 802; More v. Knox, 52 App. Div. 145, 64 N. Y. Supp. 1101. The rule is that a party is entitled to recover the value of the contract, and the jury may take into consideration, in arriving at such value, the probable prospective profits thereunder. The contention of the defendant seems to be that by reason of the uncertainty as to prospective commissions being earned under the contract the contract should be so construed as not to cover or allow for such unearned commissions, as not being within the contemplation of the parties;

and this contention is based upon an English case (In re English & Scottish Marine Ins. Co., 5 Ch. App. 737) and a United States circuit case (Pellet v. Insurance Co. [C. C.] 104 Fed. 502). We do not regard these cases as well considered, and they seem to be in conflict with the rule adopted in this state that prospective profits of a contract may enter into the question of damages for breach of such contract. Moreover, this court, in Stowell v. Insurance Co., above, gave a construction to a contract very like this one, which permitted a recovery based, among other things, upon prospective commissions; and we are not inclined now to change the decision we then made. While that case was reversed in the court of appeals on another ground, this question remains undisturbed. See Stowell v. Insurance Co., 163 N. Y. 298, 57 N. E. 480. There was no material disagreement on the trial as to the amount of damages for this breach if they were allowable at all, as the court stated to the jury, without objection or exception by defendant.

The more serious questions arise as to the second item of damage, $2,500. The agreement of the defendant was that, if the company should be dissolved, and retire from business, all local agencies and the business of said agencies should be handed over and transferred by defendant to plaintiff. This agreement meant something. The parties contemplated that there was a real value in the business of these local agencies,—as there undoubtedly was,—and it was the duty of the defendant in good faith to keep this agreement, and do what it could to effect the purpose of securing to the plaintiff the valuable interest in this business. The defendant did nothing whatever in the performance of this duty, but, on the contrary, did whatever it could do to deprive the plaintiff of such business and its benefits. It secretly, without consulting plaintiff, entered into the agreement with the Fidelity Company, and by the express terms thereof agreed to transfer and deliver to that company all that it had agreed with plaintiff to transfer and deliver to him, and it has apparently performed its contract with the Fidelity Company, to the injury and damage of the plaintiff. It made no provision whatever for the pro tection of plaintiff's interest under its contract with him when it made the contract with the Fidelity Company. The defendant did not correspond with plaintiff about the matter during the month of April, 1899. The Fidelity Company during all that month dallied with the plaintiff, getting a better hold upon his agencies and business from day to day, and finally about the 1st of May refused to make any contract with him. The evidence shows that the plaintiff suffered damage, and details were given sufficient to enable the jury, under the cases hereinbefore cited, to fix such damages. The amount seems large, but no point appears to be made that the amount should have been smaller. The jury heard the evidence, and the suggestions of counsel with reference thereto, and fixed the amount at $2,500, and we are not inclined to disturb their verdict.

The judgment should, we conclude, be modified so as to include the item of $2,500 damages, and, as so modified, be affirmed, with costs of the appeal to plaintiff. All concur, excepting McLENNAN, J., who dissents.