### CLARKE v. BOROUGH ASPHALT CO. et al.

(Supreme Court, Special Term, Kings County. February 28, 1916.)

1. CORPORATIONS &#9655;121—SALE OF STOCK—RESCISSION—LACHES.

Where plaintiff did not rescind or offer to rescind his contract for the sale of corporate stock to defendant until nearly five years after the latter's repudiation, which deprived plaintiff of part of the agreed con-

---

&#9655;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sideration, such unnecessary delay amounted to an affirmation of his obligation under the contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ☞121.]

2. CORPORATIONS ☞117—SALE OF STOCK—RESCISSION—RATIFICATION.

Where the seller of stock in an asphalt company, after refusal by the buyer to perform as to part of the consideration he had contracted to give, accepted part of the cash consideration, such act of ratification on the seller's part by accepting benefits under the contract amounted to an affirmation of it, precluding rescission.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 506; Dec. Dig. ☞117.]

3. SPECIFIC PERFORMANCE ☞70—PROPRIETY OF REMEDY—SALE.

A breach of the contract of the seller of stock in an asphalt company with the buyer that the company should purchase all its cement from the seller called for no equitable relief by way of specific performance, since specific performance should not be granted in the case of contracts to purchase personal property simply because the damages are uncertain or contingent.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 203; Dec. Dig. ☞70.]

4. SPECIFIC PERFORMANCE ☞105—LACHES.

Five years' delay on the part of a seller of stock in an asphalt company in applying for specific performance of his contract with the buyer that the company should purchase all its cement from the seller barred the suit.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 325–341; Dec. Dig. ☞105.]

5. EQUITY ☞41—ASSESSMENT OF DAMAGES.

Where plaintiff commences his action apparently entitled to equitable relief, but the impracticability or inequity of such award becomes manifest on hearing, the cause will be retained, and a personal judgment for money awarded; but, where plaintiff was not justified in believing in his alleged equities, the case will be sent to the jury term for disposition.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 116–118; Dec. Dig. ☞41.]

Action by Audley Clarke against the Borough Asphalt Company and others. Case sent to the jury term.

Owens, Gray & Tomlin, of Brooklyn, for plaintiff.
George W. Titcomb, of Brooklyn, for defendants.

CRANE, J. The agreement of March 31, 1910, between McCoy and the plaintiff, ratified April 1, 1910, by the Borough Asphalt Company, is a valid and binding agreement. In consideration for the plaintiff's stock, the controlling interest, McCoy agrees to pay $4,000 and also contracts as follows:

"V. The said McCoy further agrees to purchase from said Clarke all cement which he may use in the company's business at a price which shall be the wholesale price of cement at the time of such purchase and 30 cents added thereto for cartage and handling, and that he will have this agreement ratified by the Borough Asphalt Company."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The ratification by the company, after reciting this agreement, reads as follows:

"Now, the said Borough Asphalt Company has and hereby does ratify and confirm the said provisions above quoted from the written agreement between said Audley Clarke and Daniel J. McCoy, and has consented and hereby does consent to granting to said Clarke the privilege of unloading upon the company's dock, as in said agreement provided, and has consented and hereby does consent to purchase from said Clarke all cement which it may use in its business, as provided in said agreement.

"Dated Brooklyn, N. Y., April 1, 1910.
                    "Borough Asphalt Company,
                          "By Wm. Kelly, President.
                                "Daniel J. McCoy, Secretary and Treasurer."

McCoy and Kelly owned all the stock at the time of this ratification. The company made the agreement, so that McCoy could obtain for himself and Kelly the plaintiff's stock and the control of the company. The transfer was made by the plaintiff, but within a few weeks thereafter the company repudiated that part relating to the purchase of cement, and so notified Clarke. The facts to which we are to apply a remedy are therefore these: McCoy and Kelly obtained the plaintiff's stock under written agreement, made by McCoy and the Borough Asphalt Company, which both McCoy and Kelly owned, to pay Clarke $4,000 and buy all the cement from him which the company may use in its business. The money was paid, but the purchase part was immediately repudiated, and never kept.

[1, 2] Clarke, after receiving notice that the company would not purchase cement of him, could have rescinded the agreement, tendered the money received, and demanded back his stock. The repudiation by the company of the contract to purchase cement came so quickly after the receipt of the stock by McCoy that it is quite evident the company (Kelly and McCoy) never intended to keep it. But Clarke did not rescind or offer to rescind until the beginning of this action in January, 1915, nearly five years after the contract was broken. Rescission of a contract must be made upon discovery of the fact justifying it, or at least within a reasonable time thereafter. Unnecessary delay, or accepting benefits under the contract, will amount to an affirmation of it. Part of the $4,000 paid was by a note of McCoy dated March 31, 1910, payable 12 months thereafter. The amount of this note was accepted by Clarke after he knew that the company had refused to buy his cement. This was inconsistent with rescission. Both upon the ground of laches and also because of this act of ratification it is now too late to rescind.

[3] The plaintiff, however, insists that he can have specific performance of this contract, even if he cannot rescind, and cites the case of Petrolia Mfg. Co. v. Jenkins, 29 App. Div. 403, 51 N. Y. Supp. 1028. The facts of that case differ materially from this. The contract here is merely one of purchase. The Borough Asphalt Company agrees to purchase all its cement from the plaintiff. This calls for no equitable relief by way of specific performance. If so, every agreement to purchase, even a definite quantity of merchandise and for a definite time, could be so enforced. The difficulty to assess damages

upon a breach of a contract of sale does not authorize the application of equitable remedies, unless money damage will not adjust the wrong. Specific performance is discretionary with the court, and should not be granted to enforce a contract to purchase personal property simply because the damages are uncertain or contingent. Assessment of damages by a jury is many times but a rough and ready way of ending litigation by awarding a sum of money as payment for a wrong or for a breach of duty. The amount cannot always be calculated. To say that it is such a sum as the circumstances warrant is frequently about as near as we can come to it. Thus, in Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 209, 4 N. E. 266, 54 Am. Rep. 676, it was said of damages for breach of a contract to furnish an agent with machines for his trade:

"When it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. * * * Most contracts are entered into with the view to future profits, and such profits are in the contemplation of the parties, and so far as they can be properly proved they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy."

[4] But, even if this contract to purchase cement were one to be enforced by specific performance, the laches in the application for such relief will compel the court to deny it. Four or five years is too long to wait before beginning such an action. Groesbeck v. Morgan, 206 N. Y. 385, at page 389, 99 N. E. 1046.

[5] In January, 1915, therefore, when this action was commenced, the plaintiff was not entitled to any equitable relief: First, not to rescission, because of ratification, and also because of laches; second, not to specific performance, because the contract was not one requiring such a remedy, and likewise because of laches. He is entitled, however, to damages because of the clear violation of his contract; but where shall such damage be assessed? Will equity retain the cause and assess damages, or send the case to a jury for trial? As I understand the rule to be, as given in the following cases, it is that if, at the time the action was commenced, the plaintiff apparently was entitled to equitable relief, but it is found upon the trial to be impracticable or inequitable, or facts have since arisen making it impossible, then equity will retain the cause and award a personal judgment for a sum of money only; but where, as here, the plaintiff was not at the time of his complaint justified in believing in his alleged equities, the court will not trespass upon the right to a jury trial for damages resulting from a breach of contract, and will send this issue to the jury term for disposition. McNulty v. Mt. Morris Elec. Light. Co., 172 N. Y. 412, 65 N. E. 196; Dudley v. Congregation of St. Francis, 138 N. Y. 459, 34 N. E. 281; Mowbray v. Levy, 85 App. Div. 68, 82 N. Y. Supp. 959; Haffey v. Lynch, 143 N. Y. at page 247, 38 N. E. 298; Sternberger v. McGovern, 56 N. Y. 21; Margraf v. Muir,

57 N. Y. 155; Messenger v. Chambers, 53 Misc. Rep. 117, 103 N. Y. Supp. 1100.

This case, therefore, I send to the jury term for trial as one for breach of a contract for purchase and sale. But before doing so I dismiss it, without costs, as to the defendant William Kelly. He might have been a proper party in equity, but, not being a party to the contract, is not liable for damages · upon failure to perform. The pleadings may remain as they are; everybody understands them. The contract is pleaded, as also its breach; nothing remains but a jury trial. I will send the case to the jury part and fix a day for trial in my order. Of course, the plaintiff is entitled to insist upon his rights in equity, and if he does so insist after the above decision by me, and desires the opportunity to review my determination, I will dismiss the case, with costs, for this purpose. Otherwise, submit an order in accordance with these views.